OPINION OF THE COURT
Kaye, J.
These appeals present the common issue whether *81 employers or an employees’ association should be liable for injuries caused by the off-premises drunk driving of adult, off-duty employees who have consumed intoxicants. We conclude that neither the Dram Shop Act nor the common law encompasses such liability.

D’Amico v Christie

After leaving work at Schlegel Corporation on Friday, June 13, 1980, defendant Kenneth Christie attended a picnic at Powder Mill Park near Rochester, some distance from Schlegel’s plant. The event was organized by the Schlegel Social and Athletic Association (the Association), a voluntary society formed by Schlegel employees. The sole purpose of the Association was to organize two annual members-only social functions, a Christmas party and a summer picnic. Association members themselves set up the picnic, cooked, and cleaned up the site. Food and beverages were purchased out of a fund made up of members’ monthly dues of $1 and the proceeds of $5 ticket sales. At the picnic, cans of beer were kept on ice, freely available, in plastic-lined trash cans. Christie spent about four hours ct the picnic and may have consumed as many as 6 or 8 12-ounce cans of beer. He left at approximately 10:30 p.m. and drove to Michael’s Tavern, where he had arranged to meet friends. He continued drinking beer there, and left some time between 1:00 and 2:00 a.m. Shortly after 2:30 that morning, as he was driving home, Christie entered Interstate 490 on an exit ramp and drove west in the eastbound lane until he collided head-on with a car driven by plaintiff Theodore D’Amico, injuring him seriously. Christie later pleaded guilty to a charge of driving while intoxicated, a misdemeanor, in the Town of Brighton Justice Court.
D’Amico then brought this action against Christie, Michael’s Tavern, Berla Galliger (as president of the Association) and Schlegel, claiming that Christie was liable in common-law negligence, that Michael’s Tavern was liable under New York’s Dram Shop Act (General Obligations Law § 11-101), that the Association was legally responsible for his injuries because it sold or served the alcohol that caused Christie’s intoxication, allowing him to become so drunk that he could not safely drive an automobile, and that Schlegel was responsible for the acts of its employees. At trial, a toxicologist testifying as plaintiff’s expert opined that, based on blood *82 samples taken later during the morning of June 14, 1980, Christie had become legally intoxicated before leaving the picnic.
The trial court dismissed the complaint against Schlegel at the close of plaintiffs case and dismissed the complaint against the Association at the close of all the evidence. The jury found Christie liable in negligence and Michael’s Tavern liable for a violation of the Dram Shop Act, held D’Amico free of contributory negligence, and awarded damages against those defendants. The Appellate Division reversed as to Michael’s Tavern on grounds not relevant here and upheld the dismissal of the complaints against the Association and Schlegel, noting that the Association had not been engaged in the commercial sale of alcohol. We agree that D’Amico’s claims against the Association and Schlegel were properly dismissed.

Henry v Vann

Plaintiffs, executrices of the estates of Arthur and Evelyn Stockdale, allege that the Stockdales died as a result of injuries they suffered in an automobile accident on December 10, 1984 in Monroe, New York, when their car collided head-on with one negligently driven by defendant Jessie Vann, Jr. Vann, who was intoxicated, had been employed by defendant Monroe Tube Co. as a machine operator until shortly before the accident. Vann worked the second shift at Monroe’s plant, starting at 2:30 p.m. He took a break at about 6:30 or 7:00 p.m. After his break, at about 8:30, Vann’s foreman smelled alcohol on his breath and noticed his eyes "did not look right.” The foreman told Vann he was too intoxicated to perform his duties safely, fired him, and told him to leave the premises. The foreman saw Vann walk out of the plant. Vann got into his car and on his way home, at a point about half a mile from the Monroe plant, he drove his car into the opposite lane of oncoming traffic and collided with the Stockdales’ car.
Plaintiffs sued Vann and Monroe, alleging that Monroe was vicariously liable for Vann’s acts. Plaintiffs also contended that Monroe’s independent act of directing or allowing Vann to drive while too intoxicated to work was negligent and a direct cause of the foreseeable accident that resulted in the Stockdales’ deaths. Supreme Court denied Monroe’s motion for summary judgment on the cause of action alleging its independent negligence. The Appellate Division reversed, concluding that Monroe "violated no legally cognizable duty owing to the decedents.” (124 AD2d 783, 784.) We agree.
*83 Dram Shop Act Claim
We first consider D’Amico’s claim against the Association under the Dram Shop Act (General Obligations Law § 11-101).
At common law, one who provided intoxicating liquor was not liable for injuries caused by the drinker, who was held solely responsible. Excessive alcohol consumption was deemed to be the proximate cause of injuries produced by the inebriate; selling or furnishing alcohol to an adult who elected to become intoxicated was not viewed as the root of the resulting harm (see, e.g., Reid v Terwilliger, 116 NY 530, 533; Mead v Stratton, 87 NY 493, 496; Bertholf v O'Reilly, 74 NY 509, 524; Allen v County of Westchester, 109 AD2d 475, appeal dismissed 66 NY2d 915; Edgar v Kajet, 84 Misc 2d 100, affd 55 AD2d 597, Iv dismissed 41 NY2d 802; Note, Special Project: Social Host Liability for the Negligent Acts of Intoxicated Guests, 70 Cornell L Rev 1058, 1063 [1985]).
By the Dram Shop Act, the Legislature created an exception to the common-law rule (see, Note, Liability Under the New York Dram Shop Act, 8 Syracuse L Rev 252 [Spring 1957]). The statute provides: "Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawfully selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action such person shall have a right to recover actual and exemplary damages.” As an exception to the common law, the statute must of course be construed narrowly (see, e.g., Valicenti v Váleme, 68 NY2d 826, 829).
While not literally restricted to actual "dram shops” or commercial taverns (see, e.g., Bartkowiak v St. Adalbert’s R. C. Church Socy., 40 AD2d 306), the Dram Shop Act has consistently been read by lower courts as applicable only to sales of alcohol for profit — that is, commercial sales (see, Edgar v Kajet, 84 Misc 2d 100, affd 55 AD2d 597, supra; Conigliaro v Franco, 122 AD2d 15, 16; Greer v Ferrizz, 118 AD2d 536; Wright v Sunset Recreation, 91 AD2d 701; Gabrielle v Craft, 75 AD2d 939; Kohler v Wray, 114 Misc 2d 856). Plaintiff urges this court, first, to reject that reading of the statute and, second, even if a commercial sale is necessary, to hold that the facts here satisfy the statutory requirement. We cannot accept either argument.
*84 We find no basis for departing from the consistent interpretation of lower courts that the Dram Shop Act requires a commercial sale of alcohol. That the statute is properly limited to sellers of intoxicating liquors is made plain even by its title: "Compensation for injury caused by the illegal sale of intoxicating liquor.” The body of the statute also speaks of "unlawfully selling” alcohol. When the Legislature intended to reach the broader category of alcohol providers — as it did in 1983 in adding General Obligations Law § 11-100, applicable to minors — it said exactly that. General Obligations Law § 11-100, in contrast to the Dram Shop Act, imposes liability for injuries caused by intoxicated individuals who have not reached the legal drinking age upon persons "unlawfully furnishing” alcoholic beverages to them. Nor does anything in the long history of the Dram Shop Act support the broader reading plaintiff now urges upon us. The act appears to have uniformly required an alcohol sale as the predicate for liability (see, L 1963, ch 516, § 11-101).
In the end, plaintiff’s plea is that the statute should include all alcohol providers because of the indisputable threat to society posed by drunk drivers. We are, however, constrained in applying a statute by the unequivocal intent expressed by the Legislature in enacting it; if there is to be a change in what the Legislature has clearly written it should come from the Legislature.
Based on the affirmed findings supported by the record, we agree with the conclusion reached by both courts below that the Association was not engaged in the commercial sale of alcohol as contemplated by the Dram Shop Act. The Association made no direct sales of alcohol, and had no recognizable expectation of pecuniary gain from its social affairs. The availability of beer to coemployees who had chipped in to buy their own food and beverages for the picnic cannot be considered a commercial sale of alcohol within the Dram Shop Act.
There having been no commercial sale of alcohol, no claim is stated against the Association under the Dram Shop Act, and this claim against Schlegel obviously fails as well.
D’Amico’s Common-Law Negligence Claims
Plaintiff next urges that liability should be imposed on the Association and Schlegel under the common law.
As noted, historically it was the drinking of the alcohol, not the furnishing of it, that was regarded as the proximate cause *85 of alcohol-induced injury. There was therefore no basis for imposing liability on persons who merely furnished alcohol, for injuries caused by an intoxicated person (see, Edgar v Kajet, 84 Misc 2d 100, 101, affd 55 AD2d 597, supra; Note, Kelly v Gwinnell and Social Host Liability for the Provision of Alcohol to an Adult Guest: The Party’s Over, 49 Alb L Rev 711, 712 [1985]). Plaintiff argues that this historical view of the respective responsibilities of the provider and drinker of alcohol is antiquated, that lower courts have recognized that control and supervision of inebriates is required even in certain noncommercial settings, and that this court should emulate the example of New Jersey (Kelly v Gwinnell, 96 NJ 538, 476 A2d 1219) by imposing liability upon social hosts for highway injuries caused by intoxicated guests.
We find no basis in these arguments on the facts of this case for imposing liability on the Association. The Association owed no legal duty to D’Amico in connection with Christie’s acts (see, Waters v New York City Hous. Auth., 69 NY2d 225).
Landowners in general have a duty to act in a reasonable manner to prevent harm to those on their property (Basso v Miller, 40 NY2d 233, 241). In particular, they have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control (see, De Ryss v New York Cent. R. R. Co., 275 NY 85). Applying this rationale, lower courts have recognized that a landowner may have responsibility for injuries caused by an intoxicated guest (see, e.g., Joly v Northway Motor Car Corp., 132 AD2d 790; Comeau v Lucas, 90 AD2d 674; Huyler v Rose, 88 AD2d 755, appeal dismissed 57 NY2d 777). Significantly, however, these decisions have uniformly acknowledged that liability may be imposed only for injuries that occurred on defendant’s property, or in an area under defendant’s control, where defendant had the opportunity to supervise the intoxicated guest (see, e.g., Delamater v Kimmerle, 104 AD2d 242, 244; Comeau v Lucas, supra; Wright v Sunset Recreation, 91 AD2d 701, supra; Huyler v Rose, supra; Schirmer v Yost, 60 AD2d 789; Paul v Hogan, 56 AD2d 723; Vale v Yawarski, 78 Misc 2d 522 [Hancock, Jr., J.]). That duty emanated not from the provision of alcohol but from the obligation of a landowner to keep its premises free of known dangerous conditions, which may include intoxicated guests.
But that situation is materially different from the one at *86 hand. First, unlike the cited examples, the Association was not engaged in serving alcoholic beverages: the picnic was a cooperative venture. Association members — all coemployees who gathered voluntarily for the social benefit of a summer picnic — in effect had purchased their own food and alcoholic beverages, and set up the party and served themselves; coemployees neither dispensed nor monitored the consumption of alcohol. The Association was not in the position of a bartender or even a host dispensing alcohol, who may deny the request of a patron or guest for another drink. Second, the injuries complained of did not take place on the picnic premises, or Association property; the accident occurred on a public highway several miles distant. The Association lacked the opportunity to supervise and control that defendants in the cited cases had. Thus, it is clear that the common law of this State relating to landowners who provide alcohol to their guests does not support recovery by plaintiff against the Association.
While recognizing the moral desirability that drinking be controlled and supervised, we cannot create a new legal duty that would require the Association to respond in damages, as an insurer, for plaintiff’s injuries. Such a result would require this court to go even beyond the standard adopted by the New Jersey Supreme Court in Kelly v Gwinnell (supra). In Kelly, defendant host during a social visit to his home served his guest the equivalent of 13 drinks within an hour or two, continued serving him liquor after his guest was visibly intoxicated — actions that were "relatively easily corrected” (96 NJ, at 549-550, 476 A2d, at 1225, supra) — accompanied the guest to his automobile, saw him drive off, and was himself sufficiently concerned about the guest’s capacity that he called to see if the guest had arrived home safely. There is simply no parallel here.
Significant also is the fact that New Jersey had no Dram Shop Act. The court in Kelly emphasized this as a basis for its decision: "the very existence of a Dram Shop Act constitutes a substantial argument against expansion of the legislatively-mandated liability. Very simply, when the Legislature has spoken so specifically on the subject and has chosen to make only licensees liable, arguably the Legislature did not intend to impose the same liability on hosts.” (96 NJ 538, 554, 476 A2d 1219, 1227, supra.)
In this State the Legislature has spoken. We have a statute prohibiting the unlawful sale of alcohol generally, and *87 a statute prohibiting the unlawful provision of alcohol to minors. The Legislature adopted the statute relating to minors in 1983, and amended it in 1985 — at neither time making similar amendments to the Dram Shop Act. The Legislature, thus far, has chosen not to impose liability generally on alcohol providers. While common-law doctrine relating to landowners’ liability for dangerous conditions on their land may also protect third persons injured by intoxicated guests, that doctrine is wholly inapposite on the facts of this case. What plaintiff is in effect asking of this court is not an expansion of any relevant common-law doctrine but an amendment of General Obligations Law § 11-101, to parallel General Obligations Law § 11-100. This we cannot do.
Again, the conclusion that no liability lies against the Association compels the further conclusion that the claims were properly dismissed against Schlegel.
Henry’s Common-Law Negligence Claim
Unlike D’Amico, in this case there is no claim that the defendant employer provided alcohol to its employee or in any way contributed to his intoxicated condition. The case does not involve any alleged violation of either the Dram Shop Act or the landowners’ responsibility to keep their premises free of known dangerous conditions. Rather, the issue here is whether an employer who fires an inebriated employee and orders him off the work site owes a duty to users of the public highways who may later be injured by him. In a sense, what plaintiffs seek here is the recognition of a third tier of responsibility — neither that of the person who himself consumed the alcohol and operated the vehicle, nor that of the person who provided him with the alcohol, but that of an employer, for failing to control or supervise him after terminating his employment.
Like D’Amico, in order for plaintiffs to prevail on this claim of common-law negligence, there must first be a legal duty owed by defendant to them. Foreseeability of harm is alone not enough (Waters v New York City Hous. Auth., 69 NY2d 225, supra; Pulka v Edelman, 40 NY2d 781, 785, rearg denied 41 NY2d 901). No prior cases of this State have recognized the duty plaintiffs now espouse.
Relying principally on Otis Eng’g Corp v Clark (668 SW2d 307 [Tex]; see generally, Morrison and Woods, An Examination of the Duty Concept: Has It Evolved in Otis Engineer *88 ing v Clark?, 36 Baylor L Rev 375 [1984]), plaintiffs urge that defendant’s legal obligation to restrain or prohibit Vann from driving off the work site may be found, first, in the employer-employee relationship and, second, in the fact that the employer assumed a duty of control when it directed Vann to take certain action. In our view, neither rationale supports recovery here.
A defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control (see, Pulka v Edelman, 40 NY2d 781, 783, supra; Harper and Kime, The Duty to Control the Conduct of Another, 43 Yale LJ 886 [1934]). Certain relationships, however, may give rise to this duty. Under the doctrine of respondeat superior, for example, an employer may be liable for acts of its employees in the course and scope of employment (Riviello v Waldron, 47 NY2d 297; Johnson v Daily News, 34 NY2d 33); an employee ordinarily is not acting in the course and scope of employment when traveling to and from work, so as to impose liability on the employer for negligent driving during these trips (see, Lundberg v State of New York, 25 NY2d 467, 471, rearg denied 26 NY2d 883). Here, there can be no question that Vann was acting outside the employment relationship at the time of the accident.
Alternatively, plaintiffs urge that the employment relationship may additionally give rise to a duty on the part of an employer to control the conduct of its employee even outside the scope of employment, pointing to the Restatement (Second) of Torts § 317. That duty, however, as formulated in the Restatement, is limited to torts committed by employees on the employer’s premises or with the employer’s chattels, and similarly would be unavailing to plaintiffs because the accident occurred off the employer’s premises and did not involve the employer’s property. Thus, plaintiffs have shown no basis in the mere existence of the employer-employee relationship for the legal duty they would have us adopt.
Going beyond the employer-employee relationship itself, plaintiffs assert that the employer assumed a duty of supervision or control when it directed Vann to leave the premises. As set forth in the Restatement (Second) of Torts, "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third *89 person to prevent him from doing such harm.” (Restatement [Second] of Torts § 319.) Plaintiffs urge that the employer here took charge of Vann, that it knew or should have known that Vann was likely to cause bodily harm to others if not controlled, and that it failed to exercise reasonable care to prevent him from doing such harm (see, Otis Eng’g Corp. v Clark, 668 SW2d 307, 311 [Tex], supra). The Restatement illustrations themselves — relating to hospitals caring for contagious or violent patients — suggest a relationship more closely akin to custody, as that section has in fact been applied by lower courts (see, e.g., Cowin v Huntington Hosp., 130 Misc 2d 267; Rausch v McVeigh, 105 Misc 2d 163, 166).
Whatever else may be required, however, at the minimum such a duty requires an existing relationship between the defendant and the third person over whom "charge” is asserted (Prosser and Keeton, Torts § 56, at 383-385 [5th ed]). But the very basis for plaintiffs’ complaint is that defendant failed and neglected to take charge of Vann, when it simply fired him. In this respect the rule plaintiffs seek is broader than Otis (supra), where the employer sent its apparently intoxicated employee — still an employee subject to the employer’s control — home for the afternoon. Here, defendant did not take charge of Vann; it discharged Vann.
By the same token, such a duty of necessity must be limited to conduct that defendant may reasonably control (see, Pulka v Edelman, 40 NY2d 781, 783-784, supra). Even in Otis (supra), which as yet has no parallel in New York law, the employer virtually placed its employee behind the wheel when it accompanied him to the parking lot and sought his assurance that he could make it home. Plaintiffs have not shown any conduct of Vann’s that, in the circumstances, defendant here might reasonably have controlled.
Thus, plaintiffs have failed to demonstrate any legal duty in the existing law of this State that defendant can be said to have breached.
Nor, on these facts, should the common law be enlarged to permit plaintiffs’ recovery. It is plain that to do so would have broad ramifications, a factor we appropriately take into account in fixing the orbit of duty that will necessarily control other cases as well as this one (see, Waters v New York City Hous. Auth., 69 NY2d 225, 230, supra; see also, Morrison and Woods, An Examination of the Duty Concept: Has It Evolved in Otis Engineering v Clark?, 36 Baylor L Rev 375, 419-425). *90 Where is the line to be drawn on the legal responsibility of an employer terminating an employee in these circumstances? What is the responsibility to third persons; what is the responsibility to such an employee who then goes out onto crime-ridden streets? What action would be required of employers to satisfy this legal duty; what action do they have a legal right to take? Such vexing questions, for which no reasonable solutions are suggested or indeed discernible, persuade us that it would be unwise, on the facts presented here, to enlarge an employer’s existing common-law duties as plaintiffs suggest.
Accordingly, in D’Amico v Christie the Appellate Division order should be affirmed, with costs, and in Henry v Vann the judgment appealed from and Appellate Division order brought up for review should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
In D’Amico v Christie: Order affirmed, with costs.
In Henry v Vann: Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.