OPINION OF THE COURT
Raymond E. Cornelius, J.
During the early evening of June 14, 1985, one of the plaintiffs, Alice Terrigino, was operating a vehicle in the left, westbound lane of a four-lane highway in the City of Rochester, known as Lakeshore Boulevard. The driver’s son, Christopher Terrigino, as well as her mother, Antoinette Indovino, both of whom are also plaintiffs, were passengers in the vehicle. Another automobile, owned and operated by the defendant, Kenne Zaleski, was proceeding eastbound on the same roadway, crossed over the center line, and collided with the vehicle being operated by Alice Terrigino, allegedly causing serious injuries to one or more of the occupants thereof. Multiple actions were commenced, as a result of the collision, against various parties, which have heretofore been consolidated into one action.
There is evidence that the defendant, Kenne Zaleski, drank *476 a number of cans of beer prior to the accident, and he has entered a plea of guilty to driving an automobile while his abilities were impaired, in violation of section 1192 of the Vehicle and Traffic Law of the State of New York. In addition, he has admitted that immediately prior to the accident, he had been gathered with a number of other young people at Charlotte Beach on Lake Ontario, and smoked marihuana.[1] The causes of action against one of the codefendants, Robert Henning, is based upon General Obligations Law § 11-103 and also common-law negligence. In essence, plaintiffs contend that Robert Henning was the individual who supplied the marihuana to Kenne Zaleski, thereby causing or contributing to the latter’s impairment.[2] The defendant, Robert Henning, has now made a motion, pursuant to CPLR 3212, for an order directing the entry of summary judgment. For purposes of this motion, there is no evidence that this defendant supplied any of the beer, which was consumed, or received any remuneration for supplying the marihuana.
First, in regard to the claim under section 11-103 of the General Obligations Law, this statute, insofar as relevant, provides as follows:
"§ 11-103. Compensation for injury caused by the illegal sale of controlled substances
"1. (a) Any person who is injured in person, property, means of support or otherwise by a person whose abilities are impaired by the use of a controlled substance, or by reason of such person’s impairment, shall have a right of action against any person who caused or contributed to such impairment by unlawfully selling to or unlawfully assisting in procuring a controlled substance for such person.
"(b) In any such action, the injured person shall have a right to recover actual and exemplary damages.”
The term "controlled substance” is defined in the Public Health Law, and would include marihuana. (See, Public Health Law § 3302 [6], [20]; § 3306, Schedule I [d] [21].) Section 11-103 is one of three companion sections of the General *477 Obligations Law, all of which impose liability upon a person for providing certain substances to another individual, who, in essence, commits acts resulting in damages to a third person. Whereas section 11-103 relates to acts by a person, whose abilities are impaired by the use of a controlled substance, or by reason of such person’s impairment, sections 11-100 and 11-101 pertain to acts committed by a person who has consumed alcoholic beverages. Specifically, section 11-101 applies to injuries caused by any intoxicated person, or by reason of the intoxication of any person, and section 11-100 to injuries caused by a person under the age of 21 by reason of intoxication or impairment of ability.
All three sections provide an injured party with a cause of action, under certain circumstances, against a person who provides the substance, whether it be a controlled substance or alcoholic beverages. Although the language is similar in many respects, there are significant differences between the three sections. Thus, for example, a cause of action under section 11-100 (1) requires that a defendant, in order to be held liable, must "knowingly” cause intoxication or impairment of ability and, further, have "knowledge or reasonable cause to believe” that the individual, to whom alcoholic beverages were provided, was under 21 years of age. By comparison, sections 11-101 (1) and 11-103 (1) (a) merely require that the person, to be held liable, must have "caused or contributed” to the condition, which is responsible for the injuries. In addition, however, each of the sections requires that the substance be "unlawfully” provided in some form. Insofar as applicable to prohibited sales of alcoholic beverages in 1985, the term "unlawfully” would include sale to "[a]ny intoxicated person or to any person, actually or apparently under the influence of liquor”. (Alcoholic Beverage Control Law §65 [2].) In 1986, this section was amended and the term "unlawfully” clarified to prohibit sale of alcoholic beverages to "[a]ny visibly intoxicated person”.
Perhaps a more significant distinction between the above three sections relates to the means of providing the substance. Liability under section 11-100 (1) results "by unlawfully furnishing to or unlawfully assisting in procuring” alcoholic beverages for a person under 21 years of age. In contrast, liability under section 11-101 (1) may be premised only upon "unlawfully] selling * * * or unlawfully assisting in procuring liquor”. This latter section, which is sometimes referred to as the "Dram Shop Act”, has been interpreted as applicable *478 only to commercial sales of alcohol. (D’Amico v Christie, 71 NY2d 76 [1987].) Thus, one who merely provides alcoholic beverages, without remuneration or profit, could not be held liable under the Dram Shop Act. (See, e.g., Huyler v Rose, 88 AD2d 755 [4th Dept 1982]; Gabrielle v Craft, 75 AD2d 939 [3d Dept 1980].)
The operative language of section 11-103 (1) (a) is the same as section 11-101, and grants a right of action against any person, who has caused or contributed to the impairment of another "by unlawfully selling to or unlawfully assisting in procuring a controlled substance for such person” (emphasis added) who, in turn, has caused injury to a claimant. Accordingly, counsel for the defendant cites the decision in D’Amico v Christie (supra) in support of his motion for summary judgment. However, applying the same analysis used in that decision, this court has concluded that a different result is mandated in the pending case.
The Court of Appeals, in D’Amico v Christie (supra), in essence, based its ruling upon the legislative intent in enacting section 11-101, and the lack of any amendment at the time section 11-100 was enacted in 1983. Emphasis was placed upon the fact that the very title of the statute refers to " 'the illegal sale of intoxicating liquor’ ”, and the body of the statute imposes liability based upon rr 'unlawfully selling’ ” alcohol. (Supra, at 84.) The interpretation, placed upon the statute, upheld a long series of lower court decisions. Indeed, in cases such as Matalavage v Sadler (77 AD2d 39 [2d Dept 1980]), which contains an excellent history of the Dram Shop Act, it was noted that in order to determine whether or not there was an unlawful sale of liquor, this statute has to be read in conjunction with section 65 of the Alcoholic Beverage Control Law. This section made it "unlawful for any person to sell, deliver or give away any alcoholic beverage” to certain individuals, including a minor, under the age of 18 years, or any intoxicated person. Further, the phrase that "[n]o person shall sell, deliver or give away” (Alcoholic Beverage Control Law § 65) had been interpreted to apply only to a commercial sale or, at the very least, alcoholic beverages provided by a licensed establishment, regardless of any payment. (See, Gabrielle v Craft, supra.)
In regard to controlled substances, the terms "illegal sale” and "unlawfully selling” are likewise contained, respectively, in the title and body of section 11-103 and, in order to *479 ascertain the definition thereof, reference should, by analogy, be made to the Penal Law and the Public Health Law. In both statutes, the term "sell” means to sell, exchange, give or dispose of to another. (Penal Law § 220.00 [1]; Public Health Law § 3302 [32].) The Court of Appeals has held that "any passing of drugs from one person to another would constitute a sale”, and it is not necessary that the supplier receive something in return in order to constitute a sale. (People v Lam Lek Chong, 45 NY2d 64, 72 [1978].) Furthermore, the term "unlawfully” means in violation of article 33 of the Public Health Law. (Penal Law § 220.00 [2].) Accordingly, this court holds that section 11-103 is not limited to a commercial sale, and any transfer of a controlled substance, such as marihuana, without remuneration or receiving something of value in return, would nevertheless subject one to liability.
As previously indicated, common-law negligence is the essence of the second cause of action against the defendant, Robert Henning, and the court has determined that the motion for summary judgment, in regard to this claim, should also be denied. The "Dram Shop Act”, as well as the other two sections of the General Obligations Law discussed above (§§ 11-100, 11-103), were intended to extend causes of action to persons, who would not otherwise have had recognizable claims under theories of common-law negligence. As a general rule, the common law does not recognize a tort cause of action against a person who may furnish alcoholic beverages to another, who thereby becomes intoxicated and injures a third person. (See, Gabrielle v Craft, supra; Edgar v Kajet, 84 Misc 2d 100 [1975], affd 55 AD2d 597 [2d Dept 1976].) The reason, which has been given for this concept, is "that the drinking of the liquor, not the furnishing of it, was considered to be the proximate cause of any injury”. (Edgar v Kajet, supra, at 101.) Nevertheless, negligence causes of action have been recognized in certain limited situations, in which a person may possess a duty of care toward a third person, such as the relationship of an airline carrier to one of its passengers or a property owner to a guest. (See, e.g., O’Leary v American Airlines, 100 AD2d 959 [2d Dept 1984]; Huyler v Rose, supra.) Indeed, the Court of Appeals in D’Amico v Christie (supra) rejected a common-law negligence claim, on behalf of one plaintiff, because of the failure to demonstrate any legal duty in the existing law, which the defendant could have breached.
*480 In the decision of Montgomery v Orr (130 Misc 2d 807 [1986]), the court[3] reviewed the elements of a common-law cause of action for negligence, to wit: existence of a duty owed, breach of the duty and damages, and relied upon a section of the Penal Law to establish a duty. More specifically, the court held that a third party could bring an action in common-law negligence for injuries causally related to a breach of Penal Law § 260.20 (4), which makes one guilty of the crime of unlawfully dealing with a child when he provides alcoholic beverages to a child under a certain age. Although this section was intended to protect minors, such intent was held not to be exclusive, but would apply to the protection of third persons, as well. By way of analogy, Penal Law § 221.35 designates to unlawful sale, without consideration, of one or more preparations, compounds, mixtures or substances of an aggregate weight of two grams or less as a class B misdemeanor and, further, pursuant to Penal Law § 221.50, a class D felony if the person who receives the marihuana is less than 18 years of age.
In a recent decision, the Court of Appeals has recognized that there may be situations, in which a private right action for damages may be implied under certain statutory provisions, including the Penal Law. (See, Sheehy v Big Flats Community Day, 73 NY2d 629 [June 6, 1989].) However, as enumerated in Burns Jackson Miller Summit & Spitzer v Lindner (59 NY2d 314 [1983]) and CPC Intl. v McKesson Corp. (70 NY2d [1987]), consideration must be given to the following three essential factors: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.
In the pending case, the court believes that the plaintiffs would be members of the class sought to be protected by the provisions of article 220 of the Penal Law, recognition of a private right of action would promote the legislative purpose and would certainly be consistent with the legislative scheme. Accordingly, this court holds that the defendant, Robert Hen *481 ning, did owe a legal duty to the plaintiffs herein, and the question of proximate cause must await a factual determination at the time of trial.
Based upon the foregoing reasons, the motion for summary judgment should be denied.

. At an examination before trial, the defendant, Zaleski, was asked how he felt after drinking the beer and smoking the marihuana, of which he responded "I was buzzed a little bit”.

. At the examination before trial, the defendant, Zaleski, testified that Robert Henning provided the marihuana from a yellow envelope, which had been in his possession, and that he smoked the marihuana by taking several "hits” from a pipe.

. The decision was rendered by the Honorable John F. Lawton, now an associate member of the Appellate Division, Fourth Department.