**Karl EHRENS, Plaintiff-Appellant,**

**v.**

**LUTHERAN CHURCH, The Lutheran Church–Missouri Synod, Lutheran Church, and The Lutheran Church–Missouri Synod Atlantic District, Defendants–Appellees,**

Ronald F. Fink, Individually and as President of the Lutheran Church–Missouri Synod Atlantic District, Defendant.

Docket No. 03–9118.

United States Court of Appeals, Second Circuit.

Argued: Aug. 25, 2004.

Decided: Sept. 30, 2004.

Leonard F. Lesser, Goodwin Procter L.L.P., New York, NY (Renee S. Lesser, Simon Lesser P.C., New York, NY, on the brief), for Defendants–Appellees.

David B. Stein, Rubin, Weisman, Colasanti, Kajko & Stein, L.L.P., Lexington, MA, for Plaintiff–Appellant.

Before: MESKILL, MINER, and KATZMANN, Circuit Judges.

PER CURIAM.

Plaintiff-appellant Karl Ehrens appeals from a decision of the United States District Court for the Southern District of New York (Brieant, J.) granting summary judgment to defendants-appellees, the Lutheran Church–Missouri Synod (the "Synod") and the Lutheran Church–Missouri Synod Atlantic District (the "Atlantic District") (collectively, the "defendants"), on his claims for negligent retention and supervision.[1] For the reasons that follow, we affirm.

1. Although the complaint originally named Ronald F. Fink as a defendant, the district

## BACKGROUND

The Synod is the central advisory and organizational body of America's second-largest Lutheran Church. It is divided into various geographical Districts, each of which, as the Synod's representative, performs the functions of the Synod at the local level. The Atlantic District exercises jurisdiction over Lutheran congregations located in the New York area.

This suit arises from the sexual assault that Ehrens suffered in 1994, when he was still a minor, at the hands of Frederick Chapman, a retired Lutheran minister. From 1962 until his resignation in 1977, Chapman served as a pastor for the Good Shepherd Congregation, which is situated in the Atlantic District. In or around 1980, Chapman moved to Massachusetts to join his son in the real-estate business, and Chapman's name was transferred to the New England District's roster of ordained ministers. Thereafter, in August of 1981, Chapman requested and was granted emeritus status. He remained an emeritus minister in the New England District until 1997, when he resigned from the Synod's clergy roster.

In 1990 or 1991, Chapman joined the Wollaston Lutheran church in Quincy, Massachusetts. As a retired clergyman, Chapman sometimes assisted the regular pastors by delivering sermons and conducting services in their absence. Ehrens, who was also a member of the Wollaston congregation, met Chapman at church. Subsequently, during the period from the spring of 1994 through July 1995, Chapman sexually assaulted Ehrens. These assaults took place at Ehrens's and at Chapman's respective residences.

Ehrens filed the instant action in November 2001, alleging that Chapman was forced to resign from Good Shepard as a result of his "inappropriate behavior" towards female church members, some of whom were minors, and that Fink, the President of the Atlantic District from December 1976 through October 1989, knew of, but failed to alert the Atlantic District to, Chapman's sexual proclivities. Based on these allegations, the complaint asserted causes of action against the Synod and the Atlantic District for negligence and negligent infliction of emotional distress.

After the completion of discovery, the defendants moved for summary judgment, dismissing Ehrens's complaint. The district court granted the defendants' motion on the grounds (1) that Ehrens had failed to identify admissible evidence establishing that either the Synod or the Atlantic District had notice of Chapman's alleged proclivities to commit sexual assault, *see Ehrens v. Lutheran Church–Missouri Synod,* 269 F.Supp.2d 328, 334 (S.D.N.Y.2003), and (2) that any effort by the court to set a standard of care for the maintenance of a clergy roster would run afoul of the First Amendment, *id.* at 333. This appeal followed.

## DISCUSSION

"We review a district court's grant of summary judgment *de novo,* construing 'the evidence in the light most favorable to the non-moving party and ... draw[ing] all reasonable inferences in its favor.'" *June v. Town of Westfield, New York,* 370 F.3d 255, 257 (2d Cir.2004) (quoting *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 165–66 (2d Cir. 2003)). Summary judgment is proper "if

court found that Fink was not a defendant in the action because Ehrens had failed timely to serve him with the summons and complaint. *See Ehrens v. Lutheran Church–Missouri Syn-* od, 269 F.Supp.2d 328, 330 n. 2 (S.D.N.Y. 2003). Ehrens does not challenge this ruling on appeal.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the appropriateness of a grant of summary judgment, we, like the district court in awarding summary judgment, may rely only on admissible evidence. *See Feingold v. New York,* 366 F.3d 138, 155 n. 17 (2d Cir.2004); *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 269 F.3d 114, 123 (2d Cir.2001). Finally, "we may affirm a district court's grant of summary judgment on any ground upon which the district court could have rested its decision." *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001) (per curiam).

■ Under New York law, which the parties agree applies in this case, "[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others." *D'Amico v. Christie,* 71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896, 901 (1987). Nevertheless, Ehrens argues, as he did below, that the defendants are liable for Chapman's tortious conduct on a theory of negligent retention or supervision. To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer

relationship, *id.* 71 N.Y.2d at 87, 524 N.Y.S.2d at 6, 518 N.E.2d at 901–02; (2) that the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence, *see Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2nd Dept.1997); and (3) that the tort was committed on the employer's premises or with the employer's chattels, *D'Amico,* 524 N.Y.S.2d 1, 518 N.E.2d at 901–02.

■ Here, the district court found that Ehrens failed to adduce evidence sufficient to satisfy the second of these requirements. We agree. In response to Ehrens's first set of interrogatories, the defendants indicated that prior to July 1997, when the New England District received a letter from Ehrens's former counsel, they were unaware that Chapman had ever engaged in, or been accused of engaging in, sexual misconduct. Ehrens, for his part, failed to counter this assertion with admissible evidence from which a reasonable juror could infer that the defendants, at any time prior to the relevant incident, knew or should have known of Chapman's propensity to assault minors or otherwise to engage in inappropriate sexual conduct. The district court therefore properly awarded summary judgment to the defendants on Ehrens's negligence claims, all of which he premised on a theory of negligent retention or supervision.[2] There is, more-

---

**2.** To the extent that Ehrens's complaint could be read to assert a claim against the defendants for breach of a fiduciary relationship, *see Martinelli v. Bridgeport Roman Catholic Diocesan Corp.,* 10 F.Supp.2d 138, 157 (D.Conn.1998) (finding, under Connecticut law, that there existed a fiduciary relationship between the diocese and its parishioners, so that once the diocese had knowledge of the priest's misconduct, it had a "duty to investigate, warn and remedy" to prevent further harm), *vacated on other grounds,* 196 F.3d 409

(2d Cir.1999), the defendants' lack of actual or constructive knowledge of Chapman's sexual proclivities would also be fatal to this claim. We therefore do not need to address whether such a claim is recognized under New York law. In any event, Ehrens has waived the argument that he is entitled to recovery under this theory of liability by failing to so claim below or on appeal. *See Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 227 (2d Cir.2000) (per curiam);

over, yet another ground supporting the district court's dismissal of these claims: Ehrens acknowledges that the incidents of sexual assault about which he complains did not occur on church property but instead were perpetrated at his home and at Chapman's home. Given this admission, Ehrens also cannot satisfy the third element of a negligent supervision cause of action—the requirement that the tort must have been committed on the employer's premises or with the employer's chattels. *See D'Amico*, 524 N.Y.S.2d 1, 518 N.E.2d at 901–02.

Because we affirm the district court's award of summary judgment to the defendants on the aforementioned grounds, we need not decide whether, as Ehrens contends, the district court erred in ruling that the First Amendment precludes a finding that church authorities negligently retained or supervised a clergyman. *See Ehrens*, 269 F.Supp.2d at 332–33. We note that the district court did not address our holding in *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409 (2d Cir.1999), that the Free Exercise Clause "does not prevent courts from deciding secular disputes involving religious institutions when and for the reason that they require reference to religious matters." *Id.* at 431. We, however, expressly decline to address the merits of this issue in the context of the case before us.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court although we do not adopt all of its reasoning.

*United States v. Quiroz*, 22 F.3d 489, 490–91