OPINION OF THE COURT
Dennis M. Kehoe, J.
The defendant Hazlitt’s 1852 Vineyards, Inc., doing business as Hazlitt 1852 Vineyards & Winery has moved for an order *379 granting summary judgment against both plaintiffs and dismissing their respective complaints, as well as an order dismissing the cross claims of both codefendants (Jamie P. Dunn and Shirley A. Woughter). The plaintiffs have opposed the motion, maintaining that there are factual issues which must await determination at trial. The codefendants have joined in the plaintiffs’ opposition to Hazlitt’s motion for summary judgment.
The action arises from a motor vehicle accident which occurred on May 31, 2009, on State Route 414 in the Town of Hector, New York, at approximately 5:50 p.m. The defendant Dunn, who was operating a vehicle owned by defendant Woughter, was leaving Hazlitt’s vineyard and winery where he worked as a tasting room employee, having completed his shift for the day. Dunn proceeded to strike the motorcycles operated by plaintiffs Gary Parker and Timothy Herkimer with his vehicle in a head-on crash. Parker was killed, and Herkimer was seriously injured. Subsequently, the defendant Dunn was convicted in Schuyler County after his guilty plea to counts charging him with manslaughter in the second degree, vehicular assault in the second degree and driving while intoxicated as a misdemeanor. A breathalyzer test administered almost two hours after the accident indicated that Dunn’s BAC count was .17%.
Timothy Herkimer and his wife, and Larry J. Parker, as administrator of the estate of Gary W. Parker, subsequently commenced separate actions against the abovenamed defendants. These actions have now been consolidated for purposes of discovery, motions and trial.
The plaintiffs have essentially based their claims against Hazlitt’s on four theories of law: (1) violation of General Obligations Law § 11-101 (known as the Dram Shop Act); (2) violation of General Obligations Law § 11-100 (the so-called Social Host Law); (3) violation of Alcoholic Beverage Control Law § 65.2 (as set forth in the plaintiffs’ bill of particulars); and (4) common-law negligence, including the theory of respondeat superior. Hazlitt’s maintains that each of these theories of liability must be dismissed as a matter of law.
Turning first to the alleged violation of section 65 (2) of the Alcoholic Beverage Control Law, the court must agree with Hazlitt’s position that the section is inapplicable to the current circumstances. Section 65 (2) provides in part as follows: “No person shall sell, deliver or give away or cause or permit or *380 procure to be sold, delivered or given away any alcoholic beverages to . . . [a]ny visibly intoxicated person.” The credible evidence set forth in the moving papers as supplied by the depositions of the employees on duty at Hazlitt’s on the day in question indicates that Dunn, despite his breathalyzer results, was not visibly intoxicated on the day in question. Of more significance, case law has established that section 65 of the Alcoholic Beverage Control Law does not give rise to a private right of action (see e.g. Sherman v Robinson, 80 NY2d 483, 487 [1992]; Dodge v Victory Mkts., 199 AD2d 917, 919 [3d Dept 1993]).
Next, the court has considered the plaintiffs’ reliance on the so-called “Social Host Law.” Both case law and the language of the statute itself make it clear that the law is designed to provide a right of action against a person who provides alcohol to an underage minor, who later suffers injuries due to intoxication. Underage drinking is not an issue here.
The court has carefully considered whether there is any theory of common-law negligence which would provide an arguable basis for liability on the part of the winery. In D’Amico v Christie (71 NY2d 76, 83 [1987]), the Court of Appeals stated as follows:
“At common law, one who provided intoxicating liquor was not liable for injuries caused by the drinker, who was held solely responsible. Excessive alcohol consumption was deemed to be the proximate cause of injuries produced by the inebriate; selling or furnishing alcohol to an adult who elected to become intoxicated was not viewed as the root of the resulting harm.”
This analysis of common-law liability for injuries based on intoxication remains controlling today, with limited statutory exceptions.
Vicarious liability may be imposed upon Hazlitt’s only if the accident occurred on the defendant’s property, or if Dunn was acting in the scope of his employment at the time of the collision. However, the accident occurred on a public highway approximately one mile from the winery. In Martino v Stolzman (18 NY3d 905, 908 [2012] [citations omitted]), the Court of Appeals has recently reiterated its position regarding the liability of landowners:
“It has long been the rule in New York that ‘[Band-owners in general have a duty to act in a reasonable manner to prevent harm to those on their property.’ *381 ‘In particular, they have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons.’ Here, the Olivers were no longer in a position to control Stolzman when he entered his vehicle and drove away. Furthermore, we agree with the dissenting Justices at the Appellate Division that ‘requiring social hosts to prevent intoxicated guests from leaving their property would inappropriately expand the concept of duty.’ ”
Nor can the plaintiffs establish vicarious liability on the part of Hazlitt’s under the doctrine of respondeat superior in these circumstances. In Lundberg v State of New York (25 NY2d 467, 470 [1969] [emphasis and citation omitted]), the Court of Appeals held in part as follows:
“Under the doctrine of respondeat superior, an employer will be liable for the negligence of an employee committed while the employee is acting in the scope of his employment. An employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee’s activities.”
There is no evidence that Dunn was acting within the scope of his employment at the time he left the winery. He was returning home; he was not operating a company vehicle; and his actions were neither controlled by his employer, nor performed in furtherance of his employer’s business. There is no basis on which to impose liability on Hazlitt’s under the doctrine of respondeat superior.
Finally, the court must determine whether there is any possible claim which can be made by the plaintiffs against Hazlitt’s based upon an alleged violation of the Dram Shop Act. General Obligations Law § 11-101 (1) states as follows:
“Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action such person shall have a right to re *382 cover actual and exemplary damages.”
It is conceded by all parties that whatever alcohol Dunn consumed on the day in question he received free of charge from Hazlitt’s. Therefore, it is Hazlitt’s position that there was no “sale” of any alcoholic beverage to Dunn and thus there can be no liability on Hazlitt’s part. Nor is there any evidence that Hazlitt’s “unlawfully procured” liquor for Dunn. (See Slocum v D’s & Jayes Val. Rest. & Cafe, 182 AD2d 981 [3d Dept 1992].) Moreover, as stated earlier, the deposition testimony of the other employees indicates that Dunn did not appear to be intoxicated.
Counsel for the plaintiffs argues that it was the custom of Hazlitt’s to provide a “shift change drink” to an employee at the end of the day, which was regarded as a free job benefit. The plaintiffs strongly contend that this gesture constituted an “economic event,” a sort of “quid pro quo,” which benefitted both parties and should therefore be covered by the Dram Shop Act. The plaintiffs also maintain that Hazlitt’s encouraged its employees to drink in the tasting room, to taste the wine when a bottle was opened, to demonstrate that they enjoyed drinking the wine themselves, and even to join in a toast with the customers when a particular wine was sampled, all in order to encourage sales. The plaintiffs maintain that the court’s review of the activities in the tasting room should lead to the conclusion that there was an economic benefit to the winery resulting from the employees’ actions, which would render the statute applicable.
However, Hazlitt’s argues that a copy of the employee manual, which was given to every new employee to review, states that an employee must only consume the amount of alcohol required by his or her job duties, and that intoxication will subject an employee to disciplinary action, which may include termination. The testimony presented indicates that no one on the staff had ever had any reason to believe that Dunn had ever consumed impermissible amounts of alcohol. Finally, the deposition testimony of the staff is generally consistent in indicating that the Hazlitt’s management staff did not encourage their employees in the tasting room to drink.
Counsel for the plaintiffs maintains that there is an economic element inherent in the conduct of Hazlitt’s tasting room practices, which should preclude the court from dismissing the complaint. However, the plaintiffs are unable to come forward with any law in support of their position. This court notes that Justice Yesawich wrote a dissenting opinion in Stevens v Spec, Inc. (224 AD2d 811, 814 [3d Dept 1996]), in which he distin *383 guished D’Amico v Christie, and stated that it was reasonable to infer that supplying free drinks in certain circumstances was often done “with the hope that increased business, and hence pecuniary gain, would result,” thus bringing the claim within the Dram Shop Act. However, in the 17 years since the decision was issued, no court appears to have adopted this rationale as a majority opinion.
Nor can it be said that Hazlitt’s “unlawfully procured” alcoholic beverages for the defendant. “The term ‘procure’ includes using one’s own money to purchase alcohol for another, contributing money to the purchase of the alcohol, and giving away alcohol to another after purchasing it with one’s own money” (Fox v Clare Rose Beverage, 262 AD2d 526, 527 [2d Dept 1999] [citations omitted]; see Slocum v D’s & Jayes Val. Rest. & Cafe). This definition is not applicable to these circumstances.
Finally, counsel for the plaintiffs makes a strong plea that businesses should take responsibility for the actions of their employees if they subject the public to dangerous situations as a result of their actions at work. While the court acknowledges that there may well be a moral imperative, a defendant has no legal duty to third parties in these circumstances.
Therefore, the motion of the defendant Hazlitt’s winery for summary judgment dismissing the complaints of the respective plaintiffs is granted. The cross claims of Dunn and Woughter against Hazlitt’s are also dismissed.