This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 9
Anthony Oddo,
          Respondent,
        v.
Queens Village Committee for
Mental Health for Jamaica
Community Adolescent Program,
Inc.,
          Appellant.




          Amy S. Weissman, for appellant.
          Brian J. Isaac, for respondent.
          Pacific Legal Foundation, amicus curiae.




ABDUS-SALAAM, J.:

          On this appeal challenging the denial of a motion for

summary judgment, we consider whether the defendant mental health

and substance abuse treatment facility owed a duty of care to

plaintiff, who was assaulted by one of defendant's discharged

residents.  Because defendant discharged the resident from the

- 1 -

program, and thus lacked control over him at the time of the incident, we hold that defendant owed no duty of care to plaintiff.

I.

Non-party Sean Velentzas was arrested for holding a cab driver at gunpoint and forcing him to withdraw money from an ATM. Velentzas was given the opportunity to participate in Treatment Alternatives for Safer Communities (TASC). TASC is an alternative-to-incarceration service which, with the consent of the court and the district attorney, works with organizations like defendant, Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc. (JCAP), to provide criminal defendants with substance abuse and mental health treatment services. Velentzas was admitted to JCAP and was expected to complete the program within eighteen months; however, three weeks into his program, he got into an altercation with another resident and admitted to having consumed alcohol while at JCAP's facility. As a result, and pursuant to established guidelines, JCAP discharged Velentzas from the facility. Shortly after his expulsion, Velentzas assaulted plaintiff Anthony Oddo -- his mother's boyfriend -- by repeatedly punching him in his face and stabbing him in the shoulder.

Plaintiff commenced this negligence action against JCAP contending that his injuries were solely the result of JCAP

negligently releasing Velentzas.  After answering the complaint and following discovery, JCAP moved for summary judgment dismissing the complaint.  JCAP argued that it owed no duty to plaintiff because Velentzas was properly discharged from the facility for having violated its policies against violence and alcohol use.  In support of its motion, JCAP submitted the deposition testimony and affidavit of Ricky Cottingham, JCAP's acting clinical program director.  In his deposition, Cottingham explained that during approved outings, residents are escorted by JCAP staff and must sign in and out when they leave and return to the facility.  However, residents can leave the program against medical advice and, in any event, JCAP staff members are not authorized to physically prevent a participant from leaving the building.

In his affidavit, Cottingham stated that he was advised by facility staff on the day of the incident that Velentzas broke two cardinal rules of the facility: intoxication and physical violence.  This required his dismissal.  He explained that when TASC participants are dismissed from the program, TASC must be notified of the participant's rule violation and discharge from the program, and the participant is directed to report to TASC on the following business day.  Cottingham stated that because Velentzas was dismissed on a weekend, he would have to report to TASC the following Monday.  Similarly, because of the weekend dismissal, TASC would also be notified on that date.

Cottingham explained that, following the incident, JCAP began filling out paperwork to transfer Velentzas to an intermediary facility until Queens TASC could be notified of the altercation and violation of JCAP's rules.  However, Cottingham stated that as the paperwork was being filled out, Velentzas became enraged and began acting out of control.  Staff, in accordance with JCAP's policy, called 911.  When the police arrived Velentzas was escorted off the premises.  Cottingham opined that JCAP did not release Velentzas to the general public and did not intend to do so.

Additionally, in support of its motion, JCAP submitted a copy of the report that was created by a JCAP Clinical Counselor following the incident, which stated:

> "Client had pushed another client to the ground. It was alleged that he was intoxicated.  He refused to submit to a breathalyzer but admitted to drinking.  He stated that he was leaving and left against clinical advice. . . . Staff informed him that he had broken a cardinal rule and that there is no threat of violence or violence on property.  Staff called 911 and he was escorted by police officers off the property."

Supreme Court denied JCAP's motion for summary judgment, holding that JCAP owed a duty of care to plaintiff. The Appellate Division, with one Justice dissenting, affirmed (135 AD3d 211 [1st Dept 2015]).  The dissent reasoned that JCAP did not have a duty to protect the general public from Velentzas after his proper discharge from the facility.  That court granted

JCAP's motion for leave to appeal to this Court, certifying the following question: "Was the order of this Court, which affirmed the order of Supreme Court, properly made?"  Because we agree with the dissent's conclusion, we reverse, and answer the certified question in the negative.


                                II.

          On this motion for summary judgment, we are guided by our principle that summary judgment will be granted to the movant where it presents sufficient evidence to demonstrate the absence of any material issue of fact (see Alvarez v Prospect Hospital, 68 NY2d 320, 324 [1986]).  The issue here -- whether JCAP owed a duty of care to plaintiff -- "is a legal issue for the courts" to decide (Eiseman v State of New York, 70 NY2d 175, 187 [1987]).  Thus, the absence of a duty of care in this negligence action will entitle JCAP to summary judgment, as "[t]he threshold question in any negligence action is . . . [whether the] defendant owe[s] a legally recognized duty of care to [the] plaintiff" (Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 232 [2001]).

          Generally, there is no

          "duty to control the conduct of third persons
          to prevent them from causing injury to
          others; liability for the negligent acts of
          third persons generally arises when the
          defendant has authority to control the
          actions of such third persons.  This is so
          . . . even where 'as a practical matter'
          defendant could have exercised such control"

(Purdy v Public Adm'r of County of Westchester, 72 NY2d 1, 8 [1988], quoting D'Amico v Christie, 71 NY2d 76, 88 (1987) [other citations omitted], rearg denied 72 NY2d 953 [1988]).  As we recognized in Hamilton v Baretta U.S.A. Corp., "[a] duty may arise . . . where there is a relationship either between defendant and a third-person tortfeasor that encompasses defendant's actual control of the third person's actions, or between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others" (96 NY2d at 233).  Such relationships include master and servant, parent and child, and common carriers and their passengers (see id.).

JCAP relies on our decisions in D'Amico v Christie and its companion case Henry v Vann (71 NY2d 76) to support its contention that it owed no duty to plaintiff, because it was no longer in control of Velentzas.  In D'Amico, an employee became intoxicated while attending a work event and upon leaving got into a car accident.  Similarly, in Henry, an employee, after being fired, left the employer's premises and was involved in a car accident.  In both cases, we determined that the employer was not liable for the injuries of the plaintiff because the employer was not in control of the employee's actions.  In Henry, we noted that the employer "did not take charge of [the employee]; it discharged [him]" (id. at 89).

Plaintiff argues that we should reject JCAP's reliance on D'Amico and Henry because here JCAP maintained control over

Velentzas.  We disagree.  JCAP discharged Velentzas from its facility and was no longer in charge of him when the incident occurred.


                              III.

         JCAP had some control or authority over its residents while they remained participants of the program.  But, JCAP residents could leave the facility and terminate their participation in the program against medical advice.  Although voluntary departure from the program would trigger adverse legal consequences -- namely, dismissal from the TASC program and potential prosecution in criminal court for the charges against them -- residents could leave at any time.  In short, facilities like JCAP cannot force a participant to remain on the premises. These facilities are not prisons; JCAP's control over Velentzas was, "in fact entirely dependent upon [his] willingness to comply with and carry out" its directives (Matter of New York City Asbestos Litig., 5 NY3d 486, 495 [2005]).  In the absence of the authority to prevent a participant from leaving, it follows that, when a participant is discharged from JCAP for violating facility rules, or withdraws from the program, he or she is no longer under the facility's control.

         Since JCAP had dismissed Velentzas from the program, it was not in control of him at the time of the incident giving rise to this lawsuit.  Indeed, to hold otherwise would raise the

question of how long any prior control would last. In <u>Eiseman v State of New York</u>, we noted that we must be cognizant not to impose on a party "limitless liability to an indeterminate class of persons conceivably injured by any negligence" (70 NY2d at 188). Recognizing that concern here, it is difficult, if not impossible, to determine when JCAP's duty to protect the public from Velentzas would end if any duty existed beyond his discharge. It is unreasonable to impose upon facilities like JCAP a duty to protect the public from individuals they have dismissed from their charge because the duty would essentially be limitless. Additionally, finding a duty here could adversely impact facilities like JCAP's willingness to participate in TASC, thereby inhibiting defendants' access to treatment where TASC is deemed appropriate. Such a result would be contrary to public policy aimed at helping certain defendants overcome substance abuse issues and obtain treatment for mental health issues, in lieu of prison sentences so long as they remain in treatment.

Finally, JCAP is not negligent for failing to follow its internal policy of referring intoxicated residents discharged during the weekend to an intermediary facility. Although Velentzas was intoxicated at the time of his discharge, because he got into a physical altercation with another resident and was out of control while his transfer paperwork was being completed, JCAP called the police in an effort to protect the other resident and its staff members. JCAP's failure to place Velentzas in an

intermediary facility, however, is not a reason to hold that it still had control over him following his discharge and could be found negligent (see Pink v Rome Youth Hockey Association, 28 NY3d 994, 998 [2016]).  Therefore, JCAP is not negligent for failing to follow that particular policy.

                                IV.

        In sum, JCAP is correct that Velentzas was not under its control at the time of the assault and it owed no duty of care to plaintiff or to the public in general.  Accordingly, the order of the Appellate Division should be reversed, with costs, defendant's motion for summary judgment dismissing the complaint granted, and certified question answered in the negative.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, with costs, defendant's motion for summary judgment dismissing the complaint granted, and certified question answered in the negative.  Opinion by Judge Abdus-Salaam.  Chief Judge DiFiore and Judges Rivera, Stein, Fahey and Garcia concur. Judge Wilson took no part.

Decided February 16, 2017