OPINION OF THE COURT
ScUDDER, EJ.
Plaintiffs commenced this action seeking damages for injuries that Bryan Parslow (plaintiff) sustained when he fell out of a second-story bathroom window while attending a party at “the Roxbury,” a residence owned and managed by defendant Mr. G. Rentals, LLC, which in turn is owned solely by defendant Norman C. Giancursio. All of the defendants-respondents-appellants except Jonathan M. Henty (resident defendants) rented individual rooms inside the Roxbury and, pursuant to their leases, were authorized to use and were required to clean the common areas, kitchens and bathrooms inside the residence. The resident defendants, Henty and others held themselves out as the Delta Iota chapter of a fraternity known as Sigma Alpha Mu, but it is undisputed that defendant Sigma Alpha Mu Fraternity, Inc. (National), terminated its relationship with the Delta Iota chapter in 2005.
As relevant on the appeal and cross appeals, the resident defendants, and defendants Daniel C. Diaz and William K. Genewick, individually moved or cross-moved for summary judgment dismissing the complaint against them, and the National cross-moved for summary judgment dismissing the complaint against it. Supreme Court granted the motion of the National in its entirety and dismissed the complaint against it. The court also dismissed the 8th, 11th, and 12th causes of action. The court dismissed the third cause of action, for premises liability, insofar as it was asserted against resident defendants Steven B. Leake, Karl Smith, Corey Wilson, Kenneth M. Koperda, Theodore L. Bilohlavek and Nathan E Zilak. The court denied the motions and cross motions of the remaining resident defendants, as well as the motion of Diaz, insofar as each sought dismissal of the third cause of action against them. The court dismissed *60 the fourth cause of action, for negligent supervision, insofar as it was asserted against defendants Philip J. Schneider, Jr. and Genewick, but denied those parts of the motions and cross motions of the resident defendants and Diaz insofar as they sought summary judgment dismissing that cause of action against them. The court dismissed the fifth cause of action, alleging violations of General Obligations Law § 11-100 and Alcoholic Beverage Control Law § 65, insofar as it was asserted against Schneider. With respect to Genewick, Diaz and the resident defendants, the court granted their motions and cross motions seeking dismissal of that cause of action but only insofar as it was asserted by plaintiff. The court denied the motions and cross motions on the fifth cause of action insofar as they related “to the claims of Beth Parslow.”
On this appeal and these cross appeals, we address the court’s determinations with respect to the third, fourth, fifth and eighth causes of action as well as the court’s dismissal of the entire complaint against the National. We note that, following submission of their appellate brief, plaintiffs withdrew their appeal insofar as it concerns Schneider and Henty, and Henty withdrew his cross appeal against plaintiffs.
II
We agree with plaintiffs that the court erred in dismissing the third cause of action against Leake, Smith, Wilson, Koperda, Bilohlavek and Zilak, and we reject the contentions of Schlobohm, Wolcott, Leonello, Hooks, Morgan, and Barry that the court erred in refusing to dismiss that cause of action against them. The third cause of action alleges that the resident defendants were responsible for the maintenance and upkeep of the Roxbury and that they failed in their duty to keep the property in a safe and proper condition. It is well settled that “ ‘[Liability for a dangerous condition on property is predicated upon occupancy, ownership, control or a special use of [the] premises’ ” (Clifford v Woodlawn Volunteer Fire Co., Inc., 31 AD3d 1102, 1103 [2006]; see Knight v Realty USA.COM, Inc., 96 AD3d 1443, 1444 [2012]). Thus, a tenant, i.e., one who both occupies and controls the property, “has a comm on-law duty to keep the premises it occupies in a reasonably safe condition, even when the landlord has explicitly agreed in the lease to maintain the premises” (Reimold v Walden Terrace, Inc., 85 AD3d 1144, 1145 [2011]; see Milewski v Washington Mut., Inc., 88 AD3d 853, 854-855 [2011]).
*61 With respect to the resident defendants, we agree with plaintiffs that they are not entitled to summary judgment dismissing the third cause of action against them. Preliminarily, we reject the contentions of some of the resident defendants that they are entitled to dismissal of the third cause of action against them because plaintiff is unable to identify what may have caused him to fall from the window “without engaging in speculation” (Lane v Texas Roadhouse Holdings, LLC, 96 AD3d 1364, 1364 [2012] [internal quotation marks omitted]).
“It is well established . . . that [a] moving party must affirmatively [demonstrate] the merits of its cause of action or defense and does not meet its burden by noting gaps in its opponent’s proof . . . Although [m]ere conclusions based upon surmise, conjecture, speculation or assertions are without probative value . . . , a case of negligence based wholly on circumstantial evidence may be established if the plaintiffs show[ ] facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred” (id. at 1364-1365 [internal quotation marks omitted]; see Rothbard v Colgate Univ., 235 AD2d 675, 678 [1997]).
Here, although plaintiff was unable to recall the circumstances of his fall from the second-story window, the resident defendants submitted evidence from which negligence and causation may be reasonably inferred (see Lane, 96 AD3d at 1364-1365; Rothbard, 235 AD2d at 678; cf. Smart v Zambito, 85 AD3d 1721, 1721-1722 [2011]). We thus conclude that the burden never shifted to plaintiffs to raise a triable issue of fact (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
As tenants of the Roxbury, the resident defendants both occupied and controlled the premises and thus “owe[d] a duty of reasonable care to maintain [the] property in a safe condition and to give warning of unsafe conditions that are not open and obvious” (Barry v Gorecki, 38 AD3d 1213, 1216 [2007]; see Duelos v County of Monroe, 258 AD2d 925, 926 [1999]; see also Milewski, 88 AD3d at 854-855; Reimold, 85 AD3d at 1145; see generally Basso v Miller, 40 NY2d 233, 240-241 [1976]). Although the resident defendants rented individual rooms inside the residence, they each exercised control over the bathrooms inside the Roxbury and were required, pursuant to the terms of *62 their leases, to clean those bathrooms (cf. Rothstein v 400 E. 54th St. Co., 51 AD3d 431, 431-432 [2008]).
Having concluded that the resident defendants had a duty to maintain the bathrooms of the Roxbury in a reasonably safe condition, we now address whether those defendants breached that duty. As the Court of Appeals has recognized, a determination “whether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury” (Trincere v County of Suffolk, 90 NY2d 976, 977 [1997] [internal quotation marks omitted]; see Bielicki v Excel Indus., Inc., 104 AD3d 1318, 1318 [2013]). In our view, the resident defendants failed to establish as a matter of law that the window from which plaintiff fell did not constitute a dangerous condition on the night of the incident. The window was 78 inches high and 35 inches wide, and the window sill was “extremely low,” measuring only 133/4 inches above the floor. When fully opened, the opening measured 39 inches in height. The window had no screen or fall protection device and, on the night of the incident, it was fully open and was covered by blinds.
While the resident defendants established that the Roxbury had been recently inspected by a code enforcement officer and that a new certificate of occupancy had been issued, the “alleged compliance with the applicable statutes and regulations is not dispositive of the question whether [the resident defendants] satisfied [their] duties under the common law” (Kellman v 45 Tiemann Assoc., 87 NY2d 871, 872 [1995]; cf. Hyman v Queens County Bancorp, Inc., 3 NY3d 743, 744-745 [2004]). In our view, despite the property’s apparent compliance with the local statutes and regulations, a jury could nevertheless determine that the absence of a screen or fall protection device in the window constituted a dangerous condition (see Radcliffe v Hofstra Univ., 200 AD2d 562, 563 [1994]; Yahudah v Metro N. Riverview House, 129 AD2d 429, 431 [1987]; see also Rothbard, 235 AD2d at 677-678). Inasmuch as the resident defendants failed to establish as a matter of law that they did not breach their duty to maintain the premises in a reasonably safe condition, the burden never shifted to plaintiffs to raise a triable issue of fact (see generally Alvarez, 68 NY2d at 324).
We further conclude that the resident defendants failed to establish as a matter of law that the hazard posed by the window was open and obvious and thus that they had no duty to warn plaintiff of the hazard it presented.
*63 “Whether a hazard is open and obvious cannot be divorced from the surrounding circumstances ... A condition that is ordinarily apparent to a person making reasonable use of his or her senses may be rendered a trap for the unwary where the condition is obscured or the plaintiff is distracted” (Hayes v Texas Roadhouse Holdings, LLC, 100 AD3d 1532, 1533 [2012] [internal quotation marks omitted]).
As a side matter, we note that, even if the resident defendants had no duty to warn, their duty to keep the premises in a reasonably safe condition would not thereby be impacted (see Pelow v Tri-Main Dev., 303 AD2d 940, 941 [2003]).
The resident defendants further contend that they are entitled to summary judgment dismissing the third cause of action against them because they did not have actual or constructive notice of the allegedly dangerous condition. We reject that contention. “In seeking summary judgment dismissing the [third cause of action], [the resident] defendants had the initial burden of establishing that [they] did not create the allegedly] dangerous condition and did not have actual or constructive notice of it” (King v Sam’s E., Inc., 81 AD3d 1414, 1414-1415 [2011] [internal quotation marks omitted]; see Navetta v Onondaga Galleries LLC, 106 AD3d 1468, 1468-1469 [2013]). Inasmuch as plaintiffs did not assert that the resident defendants created the allegedly dangerous condition, “the only issue before the court was whether [they] had actual or constructive notice thereof’ (Navetta, 106 AD3d at 1469).
While some of the resident defendants established that they lacked actual notice of the condition, none of them established as a matter of law that they lacked constructive notice of it. “To constitute constructive notice, a defect [or dangerous condition] must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendants] . . . to discover and remedy it” (Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]; see Navetta, 106 AD3d at 1469). Moreover, in order to establish the notice element in such a negligence claim, a plaintiff is required to demonstrate only that the defendant had notice of the condition that the plaintiff alleges was dangerous; the plaintiff is “not required to demonstrate that [the] defendant[ ] knew that th[e] condition[ ] [was] dangerous” (Harris v Seager, 93 AD3d 1308, 1309 [2012]).
Contrary to the resident defendants’ contentions, we conclude that they failed to meet their initial burden on the is *64 sue of constructive notice. Based on the evidence submitted by the resident defendants, it appears that virtually all of the windows on the second floor are the same size and that most, if not all, of them lacked screens and fall protection devices. Indeed, the evidence submitted by some of the resident defendants established that they were well aware that the condition that plaintiffs allege was dangerous “existed prior to the accident elsewhere in the building” (Radnay v 1036 Park Corp., 17 AD3d 106, 108 [2005]). Moreover, the evidence in the record establishes that the conditions of the windows on the second floor are visible and apparent to anyone looking at the residence from the outside and to anyone who had been anywhere on the second floor. Although some of the resident defendants may not have entered the subject bathroom in the short time in which they had resided at the Roxbury, we nevertheless conclude that the submissions of the resident defendants “raise issues of fact whether the [dangerous condition] ‘was visible and apparent and existed for a sufficient length of time prior to plaintiffs fall to permit [them] to discover and remedy it’ ” (Navetta, 106 AD3d at 1469; see generally Gordon, 67 NY2d at 837). The burden thus never shifted to plaintiffs to raise a triable issue of fact (see generally Alvarez, 68 NY2d at 324).
m
With respect to the fourth cause of action, however, we agree with the resident defendants that the court erred in denying their motions and cross motions seeking summary judgment dismissing that cause of action against them. Plaintiffs alleged, inter alia, that the resident defendants served alcohol, permitted alcohol to be served or permitted individuals to bring alcohol to the party. As a result of the consumption of alcohol on the premises, attendees and guests, such as plaintiff, became intoxicated. Plaintiffs further alleged that the resident defendants had control over the attendees and guests and should have known of their intoxication. According to plaintiffs, the resident defendants “had the opportunity and duty to supervise the attendees and guests” and “had a duty to act in a reasonable manner to prevent harm to the attendees and guests.” Plaintiffs thus alleged that the resident defendants were negligent in failing to supervise the 18-year-old plaintiff and that, as a result of that negligence, plaintiff “was caused to fall out of” the second-story bathroom window.
Hosts of parties where alcohol is consumed in a home that they either own or occupy risk exposure to liability under two *65 separate and distinct theories of negligence. One theory is based on their duties as owners or occupiers of the premises “to control the conduct of third persons for the protection of others on the premises” (Dynas v Nagowski, 307 AD2d 144, 147 [2003]), and the other theory is based on the duty of adults to “provide[ ] adequate supervision for minor guests who bec[ome] intoxicated at their home” (Aquino v Higgins, 15 NY3d 903, 905 [2010]). We address first the duties of owners or occupiers of property.
“Landowners in general have a duty to act in a reasonable manner to prevent harm to those on their property ... In particular, they have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control . . . Applying this rationale, lower courts have recognized that a landowner may have responsibility for injuries caused by an intoxicated guest . . . Significantly, however, these decisions have uniformly acknowledged that liability may be imposed only for injuries that occurred on [a] defendant’s property, or in an area under [a] defendant’s control, where [the] defendant had the opportunity to supervise the intoxicated guest . . . That duty emanated not from the provision of alcohol but from the obligation of a landowner to keep its premises free of known dangerous conditions, which may include intoxicated guests” (D'Amico v Christie, 71 NY2d 76, 85 [1987] [emphasis added]).
The duty established in DAmico is “the duty to control the conduct of third persons for the protection of others on the premises,” and that duty applies to landowners as well as those who are in control or possession of the property (Dynas, 307 AD2d at 147 [emphasis added]). In essence, the intoxicated guest becomes a dangerous condition, and the “common-law doctrine relating to landowners’ liability for dangerous conditions on their land [is meant to] protect third persons injured by intoxicated guests” (D'Amico, 71 NY2d at 87 [emphasis added]; see Sheehy v Big Flats Community Day, 73 NY2d 629, 636-637 [1989]; see e.g. Demarest v Bailey, 246 AD2d 772, 773 [1998]; Comeau v Lucas, 90 AD2d 674, 675 [1982]; cf. Pettit v Green, 104 AD3d 1149, 1150 [2013]; Ahlers v Wildermuth, 70 AD3d *66 1154, 1154-1155 [2010]; McGlynn v St. Andrew Apostle Church, 304 AD2d 372, 373 [2003], lv denied 100 NY2d 508 [2003]). As the Court of Appeals noted in Sheehy, “the courts of this State have consistently refused to recognize a common-law cause of action against providers of alcoholic beverages in favor of persons injured as a result of their own voluntary intoxication” (73 NY2d at 636). The only recognized exception is “where a property owner has failed to protect others on the premises, or in other areas within the property owner’s control, from the misconduct of an intoxicated person, at least when the opportunity to supervise was present” (id. at 637 [emphasis added]). “[T]hat exception has no application in a case such as this, which involves an attempt to recover by the person who voluntarily became intoxicated” (id. [emphasis added]).
With respect to the second theory of negligence, i.e., negligent supervision, that theory imposes liability on adults who fail to supervise intoxicated minors (see generally Aquino, 15 NY3d at 905). The duty to supervise in such instances arises from the fact that
“[a] person, other than a parent, who undertakes to control, care for, or supervise an infant, is required to use reasonable care to protect the infant over whom he or she has assumed temporary custody or control. Such a person may be liable for any injury sustained by the infant which was proximately caused by his or her negligence. While a person caring for entrusted children is not cast in the role of an insurer, such an individual is obliged to provide adequate supervision and may be held liable for foreseeable injuries proximately resulting from the negligent failure to do so” (Appell v Mandel, 296 AD2d 514, 514 [2002]).
In Aquino, the Court was addressing the theories of liability against the adult homeowners (parent-defendants) related to injuries sustained by an intoxicated minor. In that case, numerous 13- and 14-year-old children were at a party hosted by one of the parent-defendants’ children with the permission of the parent-defendants. No alcohol was to be permitted but, unbeknownst to the parent-defendants, the children consumed alcohol in the basement, and several became intoxicated. The parent-defendants learned of the consumption of alcohol and intoxication when they went into the basement at the end of the party and observed beer cans (Aquino v Higgins, 68 AD3d *67 1650, 1650-1652 [2009], revd 15 NY3d 903 [2010]). The parent-defendants observed all of the guests, and there were conflicting reports on the issue whether the minor plaintiff appeared to be intoxicated. The parent-defendants attempted to ensure that all of the minor guests had a safe ride home. The minor plaintiff was injured in a car accident after leaving the parent-defendants’ home. The Court of Appeals concluded that there was a triable issue of fact whether the parent-defendants “properly-supervised [the minor guests’] departure from the premises” (id., 15 NY3d at 905; see Appell, 296 AD2d at 514).
In our view, the use of the word “supervise” in many of the D’Amico, i.e., landowner liability, cases has caused courts to conflate the idea of landowner liability with liability for negligent supervision of minors. An example of that conflation is found in Struebel v Fladd (75 AD3d 1164 [2010]), a recent decision of this Court. While not all of the relevant facts are contained in the reported decision, we may take judicial notice of the record in that appeal (see Edgewater Constr. Co., Inc. v 81 & 3 of Watertown, Inc. [appeal No. 2], 24 AD3d 1229, 1231 [2005]). In Struebel, the decedent was a 17-year-old minor who became intoxicated at a party hosted by another minor. The decedent fell from a second-story porch and died as a result of his injuries. Decedent’s mother, individually and as the administrator of his estate, commenced an action against, inter alia, the minor host’s mother and her flaneé, who were the two adults residing at the property with the minor host. While we dismissed the action against the flaneé on the ground that “the record established] that [he] was not present at the house at any time that evening” (75 AD3d at 1164), we refused to dismiss the claim for negligent supervision against the minor host’s mother, finding that there was evidence in the record that she “was at the house at various times during the evening in question” (id.). We concluded that there were issues of fact whether the minor host’s mother “had the opportunity to control the conduct of third persons on [the] premises and [was] reasonably aware of the need for such control . . . , and thus [could] be held liable for negligent supervision” (id. at 1165 [internal quotation marks omitted]). Although we cited to Dynas (307 AD2d at 147), Place v Cooper (35 AD3d 1260, 1261 [2006]) and D’Amico (71 NY2d at 85) in support of our holding, those cases involved plaintiffs who had been injured by an intoxicated adult guest. In Struebel, however, the intoxicated minor injured himself. As noted above, the Court of Appeals has stated that li *68 ability under common-law negligence “has no application in a case . . . [that] involves an attempt to recover by the person who voluntarily became intoxicated” (Sheehy, 73 NY2d at 637 [emphasis added]). The duty of the minor host’s mother to supervise the intoxicated decedent emanated not from her duty as a landowner but, rather, from the duty to protect minors over whom she had assumed temporary custody or control, regardless of how they became intoxicated (see Aquino, 15 NY3d at 905; cf. Rudden v Bernstein, 61 AD3d 736, 738 [2009], lv dismissed 14 NY3d 768 [2010], lv denied 17 NY3d 712 [2011]; Moreno v Weiner, 39 AD3d 830, 831 [2007], lv denied 9 NY3d 807 [2007]). We thus conclude that Struebel should not be cited for the proposition that adult hosts of a party may be liable to an adult guest who is injured as a result of that guest’s own voluntary intoxication.
In our view, this case is indistinguishable from O’Neill v Ithaca Coll. (56 AD3d 869, 871-872 [2008]), in which a college student voluntarily consumed alcohol before falling from a second-floor balcony. Inasmuch as there was no proof that a third person was involved in the injured plaintiff’s fall, the Third Department concluded that there was no basis to hold the party hosts liable, i.e., no duty to the injured plaintiff that was breached (see id.). While the dissent correctly notes that the Third Department in O’Neill wrote that the injured plaintiff had not been stumbling or slurring her words, and was not otherwise unable to control her physical abilities, the Court did not actually hold that liability would have attached if she had demonstrated those telltale signs of intoxication. Because the injured plaintiff in O’Neill had not displayed such signs, the Court did not decide the issue whether liability could have attached under different circumstances. Unlike the dissent, we do not attach any significance to the dicta of the Third Department in O’Neill.
It is the position of our dissenting colleague that Sheehy applies only to the negligent provision of alcohol and not to the negligent supervision of intoxicated adults. We cannot agree with that position. The issue in this case, insofar as it relates to the negligent supervision claim, is whether the resident defendants had a duty to the adult plaintiff to supervise him and to protect him from injuring himself as a result of his voluntary intoxication. Any duty of the resident defendants to protect the intoxicated plaintiff from himself would come from the fact that they hosted the party, i.e., they provided the alcohol. Otherwise, *69 plaintiff could sue anyone attending the party for failing to supervise him. In addressing the injured plaintiffs “common-law claim,” the Court of Appeals in Sheehy noted that the courts of New York had rejected “any argument that a duty exists to protect a consumer of alcohol from the results of his or her own voluntary conduct” (73 NY2d at 636). We thus conclude that, because plaintiff was not a minor entrusted to the care of the resident defendants, the resident defendants did not have a duty to protect plaintiff from the results of his own voluntary intoxication.
IV
The resident defendants further contend that the court erred in failing to dismiss the fifth cause of action against them in its entirety. We agree with the resident defendants in that respect, but we also agree with plaintiffs that the court erred in dismissing the eighth cause of action against the resident defendants, and Genewick and Diaz. The fifth cause of action alleged violations of General Obligations Law § 11-100 and Alcoholic Beverage Control Law § 65, but was asserted solely by plaintiff and not by plaintiff Beth Parslow, his mother. The eighth cause of action also alleged a violation of General Obligations Law § 11-100, but was asserted solely by plaintiffs mother. She alleged that the resident defendants, and Genewick and Diaz, among others, provided or procured the alcohol consumed by plaintiff, who was under the age of 21. She further alleged that, as plaintiff’s mother, she was caused and compelled to incur medical and other expenses after plaintiff fell out of a second-story window while in an intoxicated condition. In its decision, the court dismissed the fifth cause of action “as to the claims of plaintiff,” but refused to dismiss the fifth cause of action “as to the claims of Beth Parslow.” Finding that the eighth cause of action “seem[ed] in the main to assert a common law theory of liability for furnishing alcohol to [someone under the age of 21],” the court dismissed that cause of action.
The resident defendants contend on their cross appeals that the court should have dismissed the fifth cause of action against them in its entirety. “Alcoholic Beverage Control Law § 65 does not create an independent statutory cause of action” (Sullivan v Mulinos of Westchester, Inc., 73 AD3d 1018, 1020 [2010]), and it is well established that General Obligations Law § 11-100 does not provide a right of recovery for persons under the age of 21 (underage persons) who seek to recover for injuries *70 suffered “as a result of their own intoxication” (Rudden, 61 AD3d at 738; see Sheehy, 73 NY2d at 635). Inasmuch as the fifth cause of action was asserted solely by plaintiff, i.e., an underage person who was injured as a result of his own intoxication, we conclude that there was no basis upon which to hold the resident defendants liable under that cause of action.
Plaintiffs contend on their appeal that the court erred in dismissing the eighth cause of action against the resident defendants, and Genewick and Diaz. We again agree. Contrary to the court’s interpretation, the eighth cause of action alleged a violation of General Obligations Law § 11-100, and was asserted by plaintiffs mother only. It is well established that “she can recover for medical [and other] expenses she incurred on behalf of [plaintiff]” (Rudden, 61 AD3d at 738; see McArdle v 123 Jackpot, Inc., 51 AD3d 743, 746 [2008]).
Although the resident defendants contend that they cannot be liable under General Obligations Law § 11-100 because they were merely “passive participant^]” who did not play “an indispensable role” in procuring the alcohol consumed by plaintiff the night of the incident (Rust v Reyer, 91 NY2d 355, 361 [1998]), we reject that contention. General Obligations Law § 11-100 (1) provides that
“[a]ny person . . . injured in person, property, means of support or otherwise, by reason of the intoxication or impairment of ability of any person under the age of twenty-one years . . . shall have a right of action to recover actual damages against any person who knowingly causes such intoxication or impairment of ability by unlawfully furnishing to or unlawfully assisting in procuring alcoholic beverages for such person with knowledge or reasonable cause to believe that such person was under the age of twenty-one years.”
With respect to the resident defendants and Diaz, we conclude that they failed to establish as a matter of law that they did not unlawfully furnish or unlawfully assist in procuring alcoholic beverages for plaintiff. The evidence submitted by the resident defendants and Diaz in support of their motions and cross motions raises issues of fact whether they, as members of the defunct local fraternity or as residents of the Roxbury, participated in “a deliberate plan to provide, supply or give alcohol to . . . underage person[s]” (Rust, 91 NY2d at 360). Indeed, the evidence submitted by the resident defendants and Diaz raises *71 issues of fact whether each of them was involved in the plan to host a party at which alcohol would be served to underage persons, and whether they each helped to procure the alcohol for that party through dues, and/or fees charged to those attending the party (see id. at 357; cf. Cannon v Giordano, 93 AD3d 1329, 1330 [2012], lv denied 19 NY3d 805 [2012]; Lombart v Chambery, 19 AD3d 1110, 1111 [2005]; McGlynn, 304 AD2d at 373).
With respect to Genewick, we agree with plaintiffs that the eighth cause of action should be reinstated with respect to him inasmuch as it is undisputed that he furnished or assisted in procuring some of the alcohol consumed by plaintiff on the night of the incident (see General Obligations Law § 11-100).
We thus conclude that the eighth cause of action should be reinstated against the resident defendants, and Genewick and Diaz.
V
Finally, we reject plaintiffs’ contention that the court erred in dismissing the complaint against the National. That defendant submitted evidence in support of its motion establishing that it had disbanded the local chapter in 2005 and did not reinstate it thereafter. We thus conclude that the National demonstrated as a matter of law that it had no agency relationship with or control over the local chapter at the time of the incident (see Parlato v Equitable Life Assur. Socy. of U.S., 299 AD2d 108, 116-117 [2002], lv denied 99 NY2d 508 [2003]; cf. Oja v Grand Ch. of Theta Chi Fraternity, 255 AD2d 781, 781-782 [1998]). Although the resident defendants and others continued to represent themselves as being affiliated with the National, a claim of apparent agency requires that the principal engage in misleading conduct that induces reliance by a third party (see Hallock v State of New York, 64 NY2d 224, 231 [1984]; King v Mitchell, 31 AD3d 958, 959 [2006]). Agents cannot “imbue [themselves] with apparent authority” through their own acts (Hallock, 64 NY2d at 231; see Children’s Day Treatment Ctr. & School, Inc. v Dorn, 83 AD3d 425, 425 [2011]).
VI
Accordingly, we conclude that the order should be modified by denying those parts of the motions and cross motions of Leake, Smith, Wilson, Koperda, Bilohlavek and Zilak seeking summary judgment dismissing the third cause of action against them. We *72 also conclude that the order should be further modified by granting those parts of the motions and cross motions of the resident defendants seeking summary judgment dismissing the fourth and fifth causes of action against them, and denying those parts of the motions and cross motions of the resident defendants, and Genewick and Diaz, seeking summary judgment dismissing the eighth cause of action against them and reinstating that cause of action against them.