# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1341**

**CA 13-00298**

PRESENT: SCUDDER, P.J., FAHEY, PERADOTTO, AND CARNI, JJ.

---

BRYAN PARSLOW AND BETH PARSLOW, INDIVIDUALLY
AND AS PARENT AND NATURAL GUARDIAN,
PLAINTIFFS-APPELLANTS-RESPONDENTS,

V                                                    OPINION AND ORDER

STEVEN B. LEAKE, JONATHAN M. HENTY, COREY R.
SCHLOBOHM, JOSEF M. WOLCOTT, ANDREW LEONELLO,
NICHOLAS E. HOOKS, ANDREW M. MORGAN, KARL SMITH,
COREY WILSON, KENNETH M. KOPERDA, JASON P.
BARRY, JR., THEODORE L. BILOHLAVEK, NATHAN P.
ZILAK, DEFENDANTS-RESPONDENTS-APPELLANTS,
SIGMA ALPHA MU FRATERNITY, INC., PHILIP J.
SCHNEIDER, JR., WILLIAM K. GENEWICK, DANIEL C.
DIAZ, DEFENDANTS-RESPONDENTS,
NORMAN C. GIANCURSIO, ET AL., DEFENDANTS.

---

BURDEN, GULISANO & HICKEY, LLC, BUFFALO (PHILIP M. GULISANO OF
COUNSEL), FOR PLAINTIFFS-APPELLANTS-RESPONDENTS.

RUPP, BAASE, PFALZGRAF, CUNNINGHAM & COPPOLA LLC, ROCHESTER (ALISON
M.K. MOYER OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT THEODORE L.
BILOHLAVEK.

HISCOCK & BARCLAY, LLP, ROCHESTER (GARY H. ABELSON OF COUNSEL), FOR
DEFENDANT-RESPONDENT-APPELLANT NATHAN P. ZILAK.

CHELUS, HERDZIK, SPEYER & MONTE, P.C., BUFFALO (MICHAEL J. CHMIEL OF
COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT COREY WILSON.

BROWN & KELLY, LLP, BUFFALO (H. WARD HAMLIN, JR., OF COUNSEL), FOR
DEFENDANT-RESPONDENT-APPELLANT STEVEN B. LEAKE.

THE LAW FIRM OF JANICE M. IATI, P.C., ROCHESTER (JANICE M. IATI OF
COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT NICHOLAS E. HOOKS.

LAW OFFICE OF DESTIN C. SANTACROSE, BUFFALO (CHERYL A. KRZYWICKI OF
COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT JOSEF M. WOLCOTT.

MACKENZIE HUGHES LLP, SYRACUSE (SAMANTHA MILLIER OF COUNSEL), FOR
DEFENDANT-RESPONDENT-APPELLANT KENNETH M. KOPERDA.

CHAMBERLAIN D'AMANDA OPPENHEIMER & GREENFIELD LLP, ROCHESTER (HENRY R.
IPPOLITO OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT JASON P.
BARRY, JR.

BARTH SULLIVAN BEHR, BUFFALO (ANDREW J. KOWALEWSKI OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT COREY R. SCHLOBOHM.

KENNEY SHELTON LIPTAK NOWAK LLP, BUFFALO (RYON D. FLEMING OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT KARL SMITH.

ERNEST D. SANTORO, ESQ., P.C., ROCHESTER (ERNEST D. SANTORO OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT ANDREW M. MORGAN.

HAGELIN KENT, LLC, BUFFALO (BRENT C. SEYMOUR OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT ANDREW LEONELLO.

COSTELLO, COONEY & FEARON, PLLC, SYRACUSE (LOUIS J. VIVIANI OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT JONATHAN M. HENTY.

JAECKLE FLEISCHMANN & MUGEL, LLP, BUFFALO (HEATH J. SZYMCZAK OF COUNSEL), FOR DEFENDANT-RESPONDENT SIGMA ALPHA MU FRATERNITY, INC.

GOLDBERG SEGALLA LLP, BUFFALO (DENNIS P. GLASCOTT OF COUNSEL), FOR DEFENDANT-RESPONDENT WILLIAM K. GENEWICK.

-------------------------------------------------------------------------------------------------------

Appeal and cross appeals from an order of the Supreme Court, Monroe County (Thomas M. Van Strydonck, J.), entered October 12, 2012. The order, among other things, granted in part the motions and cross motions of defendants-respondents-appellants for summary judgment dismissing the complaint against them.

Now, upon reading and filing the stipulation discontinuing the appeal insofar as it concerns defendant Philip J. Schneider, Jr. signed by the attorneys for plaintiffs and Schneider on May 31, 2013, and upon the partial stipulation of discontinuance of plaintiffs' action against defendant Jonathan M. Henty signed by the attorneys for plaintiffs and Henty on December 10 and 12, 2013 and filed in the Monroe County Clerk's Office on December 18, 2013,

It is hereby ORDERED that said cross appeal taken by defendant Jonathan M. Henty is dismissed upon stipulation, and the appeal taken by plaintiffs insofar as it concerns Henty and defendant Philip J. Schneider, Jr., is dismissed upon stipulation, and the order is modified on the law by denying those parts of the motions and cross motions of defendants Steven B. Leake, Karl Smith, Corey Wilson, Kenneth M. Koperda, Theodore L. Bilohlavek, and Nathan P. Zilak for summary judgment dismissing the third cause of action against them, granting those parts of the motions and cross motions of defendants Leake, Corey R. Schlobohm, Josef M. Wolcott, Andrew Leonello, Nicholas E. Hooks, Andrew M. Morgan, Smith, Wilson, Koperda, Jason P. Barry, Jr., Bilohlavek and Zilak, seeking summary judgment dismissing the fourth and fifth causes of action against them, and denying those parts of the motions and cross motions of defendants Leake, Schlobohm, Wolcott, Leonello, Hooks, Morgan, Smith, Wilson, Koperda, Barry, Bilohlavek, Zilak, William K. Genewick and Daniel C. Diaz for summary judgment dismissing the eighth cause of action against them, and as modified the order is affirmed without costs.

Opinion by SCUDDER, P.J.:

I

Plaintiffs commenced this action seeking damages for injuries that Bryan Parslow (plaintiff) sustained when he fell out of a second-story bathroom window while attending a party at "the Roxbury," a residence owned and managed by defendant Mr. G. Rentals, LLC, which in turn is owned solely by defendant Norman C. Giancursio. All of the defendants-respondents-appellants except Jonathan M. Henty (resident defendants), rented individual rooms inside the Roxbury and, pursuant to their leases, were authorized to use and were required to clean the common areas, kitchens and bathrooms inside the residence. The resident defendants, Henty and others held themselves out as the Delta Iota chapter of a fraternity known as Sigma Alpha Mu, but it is undisputed that defendant Sigma Alpha Mu Fraternity, Inc. (National), terminated its relationship with the Delta Iota chapter in 2005.

As relevant on the appeal and cross appeals, the resident defendants, and defendants Daniel C. Diaz and William K. Genewick, individually moved or cross-moved for summary judgment dismissing the complaint against them, and the National cross-moved for summary judgment dismissing the complaint against it. Supreme Court granted the motion of the National in its entirety and dismissed the complaint against it. The court also dismissed the 8th, 11th, and 12th causes of action. The court dismissed the third cause of action, for premises liability, insofar as it was asserted against resident defendants Steven B. Leake, Karl Smith, Corey Wilson, Kenneth M. Koperda, Theodore L. Bilohlavek and Nathan P. Zilak. The court denied the motions and cross motions of the remaining resident defendants, as well as the motion of Diaz, insofar as each sought dismissal of the third cause of action against them. The court dismissed the fourth cause of action, for negligent supervision, insofar as it was asserted against defendants Philip J. Schneider, Jr. and Genewick, but denied those parts of the motions and cross motions of the resident defendants and Diaz insofar as they sought summary judgment dismissing that cause of action against them. The court dismissed the fifth cause of action, alleging violations of General Obligations Law § 11-100 and Alcoholic Beverage Control Law § 65, insofar as it was asserted against Schneider. With respect to Genewick, Diaz and the resident defendants, the court granted their motions and cross motions seeking dismissal of that cause of action but only insofar as it was asserted by plaintiff. The court denied the motions and cross motions on the fifth cause of action insofar as they related "to the claims of Beth Parslow."

On this appeal and these cross appeals, we address the court's determinations with respect to the third, fourth, fifth and eighth causes of action as well as the court's dismissal of the entire complaint against the National. We note that, following submission of their appellate brief, plaintiffs withdrew their appeal insofar as it concerns Schneider and Henty, and Henty withdrew his cross appeal against plaintiffs.

II

We agree with plaintiffs that the court erred in dismissing the third cause of action against Leake, Smith, Wilson, Koperda, Bilohlavek and Zilak, and we reject the contentions of Schlobohm, Wolcott, Leonello, Hooks, Morgan, and Barry that the court erred in refusing to dismiss that cause of action against them. The third cause of action alleges that the resident defendants were responsible for the maintenance and upkeep of the Roxbury and that they failed in their duty to keep the property in a safe and proper condition. It is well settled that " '[l]iability for a dangerous condition on property is predicated upon occupancy, ownership, control or a special use of [the] premises' " (*Clifford v Woodlawn Volunteer Fire Co., Inc.*, 31 AD3d 1102, 1103; *see Knight v Realty USA.COM, Inc.*, 96 AD3d 1443, 1444). Thus, a tenant, i.e., one who both occupies and controls the property, "has a common-law duty to keep the premises it occupies in a reasonably safe condition, even when the landlord has explicitly agreed in the lease to maintain the premises" (*Reimold v Walden Terrace, Inc.*, 85 AD3d 1144, 1145; *see Milewski v Washington Mut., Inc.*, 88 AD3d 853, 854-855).

With respect to the resident defendants, we agree with plaintiffs that they are not entitled to summary judgment dismissing the third cause of action against them. Preliminarily, we reject the contentions of some of the resident defendants that they are entitled to dismissal of the third cause of action against them because plaintiff is unable to identify what may have caused him to fall from the window "without engaging in speculation" (*Lane v Texas Roadhouse Holdings, LLC*, 96 AD3d 1364, 1364 [internal quotation marks omitted]).

> "It is well established . . . that [a] moving party must affirmatively [demonstrate] the merits of its cause of action or defense and does not meet its burden by noting gaps in its opponent's proof . . . Although [m]ere conclusions based upon surmise, conjecture, speculation or assertions are without probative value . . . , a case of negligence based wholly on circumstantial evidence may be established if the plaintiffs show[ ] facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred" (*id.* at 1364-1365 [internal quotation marks omitted]; *see Rothbard v Colgate Univ.*, 235 AD2d 675, 678).

Here, although plaintiff was unable to recall the circumstances of his fall from the second-story window, the resident defendants submitted evidence from which negligence and causation may be reasonably inferred (*see Lane*, 96 AD3d at 1364-1365; *Rothbard*, 235 AD2d at 678; *cf. Smart v Zambito*, 85 AD3d 1721, 1721-1722). We thus conclude that the burden never shifted to plaintiffs to raise a triable issue of fact (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324).

As tenants of the Roxbury, the resident defendants both occupied and controlled the premises and thus "owe[d] a duty of reasonable care to maintain [the] property in a safe condition and to give warning of unsafe conditions that are not open and obvious" (*Barry v Gorecki*, 38 AD3d 1213, 1216; *see Duclos v County of Monroe*, 258 AD3d 925, 926; *see also Milewski*, 88 AD3d at 854-855; *Reimold*, 85 AD3d at 1145; *see generally Basso v Miller*, 40 NY2d 233, 240-241).  Although the resident defendants rented individual rooms inside the residence, they each exercised control over the bathrooms inside the Roxbury and were required, pursuant to the terms of their leases, to clean those bathrooms (*cf. Rothstein v 400 E. 54th St. Co.*, 51 AD3d 431, 431-432).

Having concluded that the resident defendants had a duty to maintain the bathrooms of the Roxbury in a reasonably safe condition, we now address whether those defendants breached that duty.  As the Court of Appeals has recognized, a determination "whether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury" (*Trincere v County of Suffolk*, 90 NY2d 976, 977 [internal quotation marks omitted]; *see Bielicki v Excel Indus., Inc.*, 104 AD3d 1318, 1318).  In our view, the resident defendants failed to establish as a matter of law that the window from which plaintiff fell did not constitute a dangerous condition on the night of the incident.  The window was 78 inches high and 35 inches wide, and the window sill was "extremely low," measuring only 13¾ inches above the floor.  When fully opened, the opening measured 39 inches in height.  The window had no screen or fall protection device and, on the night of the incident, it was fully open and was covered by blinds.

While the resident defendants established that the Roxbury had been recently inspected by a code enforcement officer and that a new certificate of occupancy had been issued, the "alleged compliance with the applicable statutes and regulations is not dispositive of the question whether [the resident defendants] satisfied [their] duties under the common law" (*Kellman v 45 Tiemann Assoc.*, 87 NY2d 871, 872; *cf. Hyman v Queens County Bancorp, Inc.*, 3 NY3d 743, 744-745).  In our view, despite the property's apparent compliance with the local statutes and regulations, a jury could nevertheless determine that the absence of a screen or fall protection device in the window constituted a dangerous condition (*see Radcliffe v Hofstra Univ.*, 200 AD2d 562, 563; *Yahudah v Metro N. Riverview House*, 129 AD2d 429, 431; *see also Rothbard*, 235 AD2d at 677-678).  Inasmuch as the resident defendants failed to establish as a matter of law that they did not breach their duty to maintain the premises in a reasonably safe condition, the burden never shifted to plaintiffs to raise a triable issue of fact (*see generally Alvarez*, 68 NY2d at 324).

We further conclude that the resident defendants failed to establish as a matter of law that the hazard posed by the window was open and obvious and thus that they had no duty to warn plaintiff of the hazard it presented.  "Whether a hazard is open and obvious cannot be divorced from the surrounding circumstances . . . A condition that is ordinarily apparent to a person making reasonable use of his or her

senses may be rendered a trap for the unwary where the condition is obscured or the plaintiff is distracted" (*Hayes v Texas Roadhouse Holdings, LLC*, 100 AD3d 1532, 1533 [internal quotation marks omitted]).  As a side matter, we note that, even if the resident defendants had no duty to warn, their duty to keep the premises in a reasonably safe condition would not thereby be impacted (*see Pelow v Tri-Main Dev.*, 303 AD2d 940, 941).

The resident defendants further contend that they are entitled to summary judgment dismissing the third cause of action against them because they did not have actual or constructive notice of the allegedly dangerous condition.  We reject that contention.  "In seeking summary judgment dismissing the [third cause of action], [the resident] defendant[s] had the initial burden of establishing that [they] did not create the alleged[ly] dangerous condition and did not have actual or constructive notice of it" (*King v Sam's E., Inc.*, 81 AD3d 1414, 1414-1415 [internal quotation marks omitted]*; see Navetta v Onondaga Galleries LLC*, 106 AD3d 1468, 1468-1469).  Inasmuch as plaintiffs did not assert that the resident defendants created the allegedly dangerous condition, "the only issue before the court was whether [they] had actual or constructive notice thereof" (*Navetta*, 106 AD3d at 1469).

While some of the resident defendants established that they lacked actual notice of the condition, none of them established as a matter of law that they lacked constructive notice of it.  "To constitute constructive notice, a defect [or dangerous condition] must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant[s] . . . to discover and remedy it" (*Gordon v American Museum of Natural History*, 67 NY2d 836, 837; *see Navetta*, 106 AD3d at 1469).  Moreover, in order to establish the notice element in such a negligence claim, a plaintiff is required to demonstrate only that the defendant had notice of the condition that the plaintiff alleges was dangerous; the plaintiff is "not required to demonstrate that [the] defendant[] knew that th[e] condition[] [was] dangerous" (*Harris v Seager*, 93 AD3d 1308, 1309).

Contrary to the resident defendants' contentions, we conclude that they failed to meet their initial burden on the issue of constructive notice.  Based on the evidence submitted by the resident defendants, it appears that virtually all of the windows on the second floor are the same size and that most, if not all, of them lacked screens and fall protection devices.  Indeed, the evidence submitted by some of the resident defendants established that they were well aware that the condition that plaintiffs allege was dangerous "existed prior to the accident elsewhere in the building" (*Radnay v 1036 Park Corp.*, 17 AD3d 106, 108).  Moreover, the evidence in the record establishes that the conditions of the windows on the second floor are visible and apparent to anyone looking at the residence from the outside and to anyone who had been anywhere on the second floor.  Although some of the resident defendants may not have entered the subject bathroom in the short time in which they had resided at the Roxbury, we nevertheless conclude that the submissions of the resident defendants "raise issues of fact whether the [dangerous condition]

'was visible and apparent and existed for a sufficient length of time
prior to plaintiff's fall to permit [them] to discover and remedy it'
" (*Navetta*, 106 AD3d at 1469; *see generally Gordon*, 67 NY2d at 837).
The burden thus never shifted to plaintiffs to raise a triable issue
of fact (*see generally Alvarez*, 68 NY2d at 324).

                                    III

        With respect to the fourth cause of action, however, we agree
with the resident defendants that the court erred in denying their
motions and cross motions seeking summary judgment dismissing that
cause of action against them.  Plaintiffs alleged, inter alia, that
the resident defendants served alcohol, permitted alcohol to be served
or permitted individuals to bring alcohol to the party.  As a result
of the consumption of alcohol on the premises, attendees and guests,
such as plaintiff, became intoxicated.  Plaintiffs further alleged
that the resident defendants had control over the attendees and guests
and should have known of their intoxication.  According to plaintiffs,
the resident defendants "had the opportunity and duty to supervise the
attendees and guests" and "had a duty to act in a reasonable manner to
prevent harm to the attendees and guests."  Plaintiffs thus alleged
that the resident defendants were negligent in failing to supervise
the 18-year-old plaintiff and that, as a result of that negligence,
plaintiff "was caused to fall out of" the second-story bathroom
window.

        Hosts of parties where alcohol is consumed in a home that they
either own or occupy risk exposure to liability under two separate and
distinct theories of  negligence.  One theory is based on their duties
as owners or occupiers of the premises "to control the conduct of
third persons for the protection of others on the premises" (*Dynas v
Nagowski*, 307 AD2d 144, 147), and the other theory is based on the
duty of adults to "provide[] adequate supervision for minor guests who
bec[ome] intoxicated at their home" (*Aquino v Higgins*, 15 NY3d 903,
905).  We address first the duties of owners or occupiers of property.

                "Landowners in general have a duty to act in a
                reasonable manner to prevent harm to those on
                their property . . . In particular, they have a
                duty to control the conduct of third persons on
                their premises when they have the opportunity to
                control such persons and are reasonably aware of
                the need for such control . . . Applying this
                rationale, lower courts have recognized that a
                landowner may have responsibility for injuries
                *caused by* an intoxicated guest . . .
                Significantly, however, these decisions have
                uniformly acknowledged that liability may be
                imposed only for injuries that occurred on [a]
                defendant's property, or in an area under [a]
                defendant's control, where [the] defendant had the
                opportunity to supervise the intoxicated guest . .
                . That duty emanated not from the provision of
                alcohol but from the obligation of a landowner to

keep its premises free of known dangerous
conditions, which may include intoxicated guests"
(*D'Amico v Christie*, 71 NY2d 76, 85 [emphasis
added]).

The duty established in *D'Amico* is "the duty to control the
conduct of third persons *for the protection of others* on the
premises," and that duty applies to landowners as well as those who
are in control or possession of the property (*Dynas*, 307 AD2d at 147
[emphasis added]). In essence, the intoxicated guest becomes a
dangerous condition, and the "common-law doctrine relating to
landowners' liability for dangerous conditions on their land [is meant
to] protect third persons injured *by* intoxicated guests" (*D'Amico*, 71
NY2d at 87 [emphasis added]; *see Sheehy v Big Flats Community Day*, 73
NY2d 629, 636-637; *see e.g. Demarest v Bailey*, 246 AD2d 772, 773;
*Comeau v Lucas*, 90 AD2d 674, 675; *cf. Pettit v Green*, 104 AD3d 1149,
1150; *Ahlers v Wildermuth*, 70 AD3d 1154, 1154-1155; *McGlynn v St.
Andrew Apostle Church*, 304 AD2d 372, 373, *lv denied* 100 NY2d 508). As
the Court of Appeals noted in *Sheehy*, "the courts of this State have
consistently refused to recognize a common-law cause of action against
providers of alcoholic beverages in favor of persons injured as a
result of their own voluntary intoxication" (73 NY2d at 636). The
only recognized exception is "where a property owner has failed to
protect *others* on the premises, or in other areas within the property
owner's control, from the misconduct of an intoxicated person, at
least when the opportunity to supervise was present" (*id.* at 637
[emphasis added]). "[T]hat exception has *no application* in a case
such as this, which involves an attempt to recover by the person who
voluntarily became intoxicated" (*id.* [emphasis added]).

With respect to the second theory of negligence, i.e., negligent
supervision, that theory imposes liability on *adults* who fail to
supervise intoxicated *minors* (*see generally Aquino*, 15 NY3d at 905).
The duty to supervise in such instances arises from the fact that

> "[a] person, other than a parent, who undertakes
> to control, care for, or supervise an infant, is
> required to use reasonable care to protect the
> infant over whom he or she has assumed temporary
> custody or control. Such a person may be liable
> for any injury sustained by the infant which was
> proximately caused by his or her negligence.
> While a person caring for entrusted children is
> not cast in the role of an insurer, such an
> individual is obliged to provide adequate
> supervision and may be held liable for foreseeable
> injuries proximately resulting from the negligent
> failure to do so" (*Appell v Mandel*, 296 AD2d 514,
> 514).

In *Aquino*, the Court was addressing the theories of liability
against the adult homeowners (parent-defendants) related to injuries
sustained by an intoxicated minor. In that case, numerous 13- and 14-

year-old children were at a party hosted by one of the parent-
defendants' children with the permission of the parent-defendants.  No
alcohol was to be permitted but, unbeknownst to the parent-defendants,
the children consumed alcohol in the basement, and several became
intoxicated.  The parent-defendants learned of the consumption of
alcohol and intoxication when they went into the basement at the end
of the party and observed beer cans (*id.*, 68 AD3d 1650, 1650-1652,
*revd* 15 NY3d 903).  The parent-defendants observed all of the guests,
and there were conflicting reports on the issue whether the minor
plaintiff appeared to be intoxicated.  The parent-defendants attempted
to ensure that all of the minor guests had a safe ride home.  The
minor plaintiff was injured in a car accident after leaving the
parent-defendants' home.  The Court of Appeals concluded that there
was a triable issue of fact whether the parent-defendants "properly
supervised [the minor guests'] departure from the premises" (*id.*, 15
NY3d at 905; *see Appell*, 296 AD2d at 514).

     In our view, the use of the word "supervise" in many of the
*D'Amico*, i.e., landowner liability, cases has caused courts to
conflate the idea of landowner liability with liability for negligent
supervision of minors.  An example of that conflation is found in
*Struebel v Fladd* (75 AD3d 1164), a recent decision of this Court.
While not all of the relevant facts are contained in the reported
decision, we may take judicial notice of the record in that appeal
(*see Edgewater Constr. Co., Inc. v 81 & 3 of Watertown, Inc*. [appeal
No. 2], 24 AD3d 1229, 1231).  In *Struebel*, the decedent was a 17-year-
old minor who became intoxicated at a party hosted by another minor.
The decedent fell from a second-story porch and died as a result of
his injuries.  Decedent's mother, individually and as the
administrator of his estate, commenced an action against, inter alia,
the minor host's mother and her fiancé, who were the two adults
residing at the property with the minor host.  While we dismissed the
action against the fiancé on the ground that "the record establishe[d]
that [he] was not present at the house at any time that evening" (*id.*,
75 AD3d at 1164), we refused to dismiss the claim for negligent
supervision against the minor host's mother, finding that there was
evidence in the record that she "was at the house at various times
during the evening in question" (*id.*).  We concluded that there were
issues of fact whether the minor host's mother "had the opportunity to
control the conduct of third persons on [the] premises and [was]
reasonably aware of the need for such control . . . , and thus [could]
be held liable for negligent supervision" (*id.* at 1165 [internal
quotation marks omitted]).  Although we cited to *Dynas* (307 AD2d at
147), *Place v Cooper* (35 AD3d 1260, 1261) and *D'Amico* (71 NY2d at 85)
in support of our holding, those cases involved plaintiffs who had
been injured *by* an intoxicated adult guest.  In *Struebel*, however, the
intoxicated minor injured himself.  As noted above, the Court of
Appeals has stated that liability under common-law negligence "has *no
application* in a case . . . [that] involves an attempt to recover by
the person who voluntarily became intoxicated" (*Sheehy*, 73 NY2d at 637
[emphasis added]).  The duty of the minor host's mother to supervise
the intoxicated decedent emanated not from her duty as a landowner
but, rather, from the duty to protect minors over whom she had assumed
temporary custody or control, regardless of how they became

intoxicated (*see Aquino*, 15 NY3d at 905; *cf. Rudden v Bernstein*, 61 AD3d 736, 738, *lv dismissed* 14 NY3d 768, *lv denied* 17 NY3d 712; *Moreno v Weiner*, 39 AD3d 830, 831, *lv denied* 9 NY3d 807).  We thus conclude that *Struebel* should not be cited for the proposition that adult hosts of a party may be liable to an adult guest who is injured as a result of that guest's own voluntary intoxication.

In our view, this case is indistinguishable from *O'Neill v Ithaca Coll.* (56 AD3d 869, 871-872), in which a college student voluntarily consumed alcohol before falling from a second-floor balcony.  Inasmuch as there was no proof that a third person was involved in the injured plaintiff's fall, the Third Department concluded that there was no basis to hold the party hosts liable, i.e., no duty to the injured plaintiff that was breached (*see id.*).  While the dissent correctly notes that the Third Department in *O'Neill* wrote that the injured plaintiff had not been stumbling or slurring her words, and was not otherwise unable to control her physical abilities, the Court did not actually hold that liability would have attached if she had demonstrated those telltale signs of intoxication.  Because the injured plaintiff in *O'Neill* had not displayed such signs, the Court did not decide the issue whether liability could have attached under different circumstances.  Unlike the dissent, we do not attach any significance to the dicta of the Third Department in *O'Neill*.

It is the position of our dissenting colleague that *Sheehy* applies only to the negligent provision of alcohol and not to the negligent supervision of intoxicated adults.  We cannot agree with that position.  The issue in this case, insofar as it relates to the negligent supervision claim, is whether the resident defendants had a duty *to the adult plaintiff* to supervise him and to protect him from injuring himself as a result of his voluntary intoxication.  Any duty of the resident defendants to protect the intoxicated plaintiff from himself would come from the fact that they hosted the party, i.e., they provided the alcohol.  Otherwise, plaintiff could sue anyone attending the party for failing to supervise him.  In addressing the injured plaintiff's "common-law claim," the Court of Appeals in *Sheehy* noted that the courts of New York had rejected "any argument that a duty exists to protect a consumer of alcohol from the results of his or her own voluntary conduct" (73 NY2d at 636).  We thus conclude that, because plaintiff was not a minor entrusted to the care of the resident defendants, the resident defendants did not have a duty to protect plaintiff from the results of his own voluntary intoxication.

IV

The resident defendants further contend that the court erred in failing to dismiss the fifth cause of action against them in its entirety.  We agree with the resident defendants in that respect, but we also agree with plaintiffs that the court erred in dismissing the eighth cause of action against the resident defendants, and Genewick and Diaz.  The fifth cause of action alleged violations of General Obligations Law § 11-100 and Alcoholic Beverage Control Law § 65, but was asserted solely by plaintiff and not by plaintiff Beth Parslow, his mother.  The eighth cause of action also alleged a violation of

General Obligations Law § 11-100, but was asserted solely by plaintiff's mother. She alleged that the resident defendants, and Genewick and Diaz, among others, provided or procured the alcohol consumed by plaintiff, who was under the age of 21. She further alleged that, as plaintiff's mother, she was caused and compelled to incur medical and other expenses after plaintiff fell out of a second-story window while in an intoxicated condition. In its decision, the court dismissed the fifth cause of action "as to the claims of plaintiff," but refused to dismiss the fifth cause of action "as to the claims of Beth Parslow." Finding that the eighth cause of action "seem[ed] in the main to assert a common law theory of liability for furnishing alcohol to [someone under the age of 21]," the court dismissed that cause of action.

The resident defendants contend on their cross appeals that the court should have dismissed the fifth cause of action against them in its entirety. "Alcoholic Beverage Control Law § 65 does not create an independent statutory cause of action" (*Sullivan v Mulinos of Westchester, Inc.*, 73 AD3d 1018, 1020), and it is well established that General Obligations Law § 11-100 does not provide a right of recovery for persons under the age of 21 (underage persons) who seek to recover for injuries suffered "as a result of their own intoxication" (*Rudden*, 61 AD3d at 738*; see Sheehy*, 73 NY2d at 635). Inasmuch as the fifth cause of action was asserted solely by plaintiff, i.e., an underage person who was injured as a result of his own intoxication, we conclude that there was no basis upon which to hold the resident defendants liable under that cause of action.

Plaintiffs contend on their appeal that the court erred in dismissing the eighth cause of action against the resident defendants, and Genewick and Diaz. We again agree. Contrary to the court's interpretation, the eighth cause of action alleged a violation of General Obligations Law § 11-100, and was asserted by plaintiff's mother only. It is well established that "she can recover for medical [and other] expenses she incurred on behalf of [plaintiff]" (*Rudden*, 61 AD3d at 738; *see McArdle v 123 Jackpot, Inc.*, 51 AD3d 743, 746).

Although the resident defendants contend that they cannot be liable under General Obligations Law § 11-100 because they were merely "passive participant[s]" who did not play "an indispensable role" in procuring the alcohol consumed by plaintiff the night of the incident (*Rust v Reyer*, 91 NY2d 355, 361), we reject that contention. General Obligations Law § 11-100 (1) provides that

> "[a]ny person . . . injured in person, property,
> means of support or otherwise, by reason of the
> intoxication or impairment of ability of any
> person under the age of twenty-one years . . .
> shall have a right of action to recover actual
> damages against any person who knowingly causes
> such intoxication or impairment of ability by
> unlawfully furnishing to or unlawfully assisting
> in procuring alcoholic beverages for such person
> with knowledge or reasonable cause to believe that

                  such person was under the age of twenty-one
                  years."

     With respect to the resident defendants and Diaz, we conclude
that they failed to establish as a matter of law that they did not
unlawfully furnish or unlawfully assist in procuring alcoholic
beverages for plaintiff.  The evidence submitted by the resident
defendants and Diaz in support of their motions and cross motions
raises issues of fact whether they, as members of the defunct local
fraternity or as residents of the Roxbury, participated in "a
deliberate plan to provide, supply or give alcohol to . . . underage
person[s]" (*Rust*, 91 NY2d at 360).  Indeed, the evidence submitted by
the resident defendants and Diaz raises issues of fact whether each of
them was involved in the plan to host a party at which alcohol would
be served to underage persons, and whether they each helped to procure
the alcohol for that party through dues, and/or fees charged to those
attending the party (*see id*. at 357; *cf. Cannon v Giordano*, 93 AD3d
1329, 1330, *lv denied* 19 NY3d 805; *Lombart v Chambery*, 19 AD3d 1110,
1111; *McGlynn*, 304 AD2d at 373).

     With respect to Genewick, we agree with plaintiffs that the
eighth cause of action should be reinstated with respect to him
inasmuch as it is undisputed that he furnished or assisted in
procuring some of the alcohol consumed by plaintiff on the night of
the incident (*see* General Obligations Law § 11-100).

     We thus conclude that the eighth cause of action should be
reinstated against the resident defendants, and Genewick and Diaz.

                                   V

     Finally, we reject plaintiffs' contention that the court erred in
dismissing the complaint against the National.  That defendant
submitted evidence in support of its motion establishing that it had
disbanded the local chapter in 2005 and did not reinstate it
thereafter.  We thus conclude that the National demonstrated as a
matter of law that it had no agency relationship with or control over
the local chapter at the time of the incident (*see Parlato v Equitable
Life Assur. Socy. of U.S.*, 299 AD2d 108, 116-117, *lv denied* 99 NY2d
508; *cf. Oja v Grand Ch. of Theta Chi Fraternity*, 255 AD2d 781, 781-
782).  Although the resident defendants and others continued to
represent themselves as being affiliated with the National, a claim of
apparent agency requires that the principal engage in misleading
conduct that induces reliance by a third party (*see Hallock v State of
New York*, 64 NY2d 224, 231; *King v Mitchell*, 31 AD3d 958, 959).
Agents cannot "imbue [themselves] with apparent authority" through
their own acts (*Hallock*, 64 NY2d at 231; *see Children's Day Treatment
Ctr. & School, Inc. v Dorn*, 83 AD3d 425, 425).

                                  VI

     Accordingly, we conclude that the order should be modified by
denying those parts of the motions and cross motions of Leake, Smith,
Wilson, Koperda, Bilohlavek and Zilak seeking summary judgment

dismissing the third cause of action against them.  We also conclude that the order should be further modified by granting those parts of the motions and cross motions of the resident defendants seeking summary judgment dismissing the fourth and fifth causes of action against them, and denying those parts of the motions and cross motions of the resident defendants, and Genewick and Diaz, seeking summary judgment dismissing the eighth cause of action against them and reinstating that cause of action against them.

All concur except FAHEY, J., who dissents in part and votes to modify in accordance with the following Opinion:

I

I agree with the majority that Supreme Court erred in dismissing the third cause of action, for premises liability, against defendants-respondents-appellants Steven B. Leake, Karl Smith, Corey Wilson, Kenneth M. Koperda, Theodore L. Bilohlavek and Nathan P. Zilak.  I also agree with the majority that the court erred in failing to dismiss the fifth cause of action in its entirety against those whom my colleagues in the majority characterize as the resident defendants, i.e., all of the defendants-respondents-appellants except Jonathan M. Henty.  The fifth cause of action was asserted solely by Bryan Parslow (plaintiff) and alleged violations of General Obligations Law § 11-100 and Alcoholic Beverage Control Law § 65.  Likewise, I agree with the majority that the court erred in dismissing the eighth cause of action, which was asserted solely by plaintiff Beth Parslow and which alleged a violation of General Obligations Law § 11-100, against the resident defendants, and defendants William K. Genewick and Daniel C. Diaz.

I cannot agree with the majority, however, that the court erred in denying the motions and cross motions of the resident defendants seeking summary judgment dismissing the fourth cause of action, for negligent supervision, against them.  In my view, the resident defendants had a duty to supervise and control their guests, including plaintiff, at the party at issue, and I conclude that the order should be affirmed to that extent.  I therefore respectfully dissent in part.

II

As the majority notes, this action arises from an incident in which plaintiff fell out of a second-story window while attending a party at a house owned and managed by defendant Mr. G. Rentals, LLC. The house was occupied by 20 tenants and all of the resident defendants rented individual rooms in the house.  The resident defendants and others held themselves out as members of the Sigma Alpha Mu fraternity.

The determination to hold the party was made during a weekly meeting of the fraternity attended by nearly everyone who lived in the house.  The party involved 50 to 80 people, was concentrated in a second-floor common area of the house, and was open to anyone who had heard of it.  The record establishes that each resident defendant was

aware of the party by virtue of being present at the house for some time during the party.

Guests at the party were not asked for proof of age and plaintiff, who was an 18-year-old college freshman, paid to attend the party with a group of three other friends. Plaintiff's group brought a backpack containing approximately 15 cans of beer to the party, which entitled them to a discount on their payment for admission to the party, and additional beer was also available for guests. Plaintiff initially drank beer that his group brought to the party, and he participated in a fraternity rush interview and eventually played a game of "beer pong" fueled by beer provided at the party.

Approximately one hour after participating in that "beer pong" game, plaintiff vomited, "slurred his words" and was "swaying." One of the members of plaintiff's group advised plaintiff that plaintiff "probably should get to the bathroom," which was on the second floor of the house. Plaintiff, who was obviously drunk, staggered in the direction of that room. The casing of the bathroom's window was seven feet high and four feet wide, and its sill was approximately 14 inches from the floor. The window, which was double-hung, had an opening that was three feet high and four feet wide, and it did not have a screen or fall protection device.

Shortly after entering the bathroom alone, plaintiff was discovered on the ground outside, below the bathroom window. The bathroom window was "wide open," but the window opening was concealed by horizontal blinds that covered the opening at the time plaintiff fell. The fall left plaintiff paralyzed from the waist down.

III

"Landowners in general have a duty to act in a reasonable manner to prevent harm to those on their property" (*D'Amico v Christie*, 71 NY2d 76, 85; *see Martino v Stolzman*, 18 NY3d 905, 908). "The existence and scope of [that] duty is, in the first instance, a legal question for determination by the courts" (*Sanchez v State of New York*, 99 NY2d 247, 252; *see Di Ponzio v Riordan*, 89 NY2d 578, 583; *Kolodziejczak v Kolodziejczak*, 83 AD3d 1377, 1379; *see generally Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 236). The duty to supervise and control the conduct of third persons on premises extends to those in control or possession of the premises (*see Struebel v Fladd*, 75 AD3d 1164, 1165; *Dynas v Nagowski*, 307 AD2d 144, 147). Here, that duty extended to all resident defendants (*see O'Neill v Ithaca Coll.*, 56 AD3d 869, 871).

Courts of this State "have consistently refused to recognize a common-law cause of action against providers of alcoholic beverages in favor of persons injured as a result of their own voluntary intoxication" (*Sheehy v Big Flats Community Day*, 73 NY2d 629, 636; *see e.g. Kudisch v Grumpy Jack's, Inc.*, 112 AD3d 788, 789; *Van Neil v Hopper*, 167 AD2d 954, 954, *lv denied* 77 NY2d 804), and there is no dispute "that the mere infancy of [an] injured person does not

constitute an exception to that voluntary intoxication rule" (*Searley v Wegmans Food Mkts., Inc.*, 24 AD3d 1202, 1202).  The question now before us, however, involves not the *provision* of alcohol, but the *supervision* of a voluntarily intoxicated person at a large party involving a dangerous combination of large quantities of alcohol and underage drinking.

*O'Neill v Ithaca Coll.* (56 AD3d 869) is instructive here.  That case arose from the fall of the underage plaintiff from the balcony of an apartment during a small party.  The plaintiffs commenced an action alleging that the defendant (college) was "liable for [the underage plaintiff's] injuries because, among other things, the balcony and its railings were unsafe and negligently designed" (*id.* at 869).  The college subsequently commenced a third-party action seeking contribution against, inter alia, the five students who shared the subject apartment.  Two of those students moved for summary judgment dismissing the third-party complaint against them, and the Third Department rejected the college's contention that the moving students were "potentially liable because they breached a duty owed to both [the] defendant and [the underage] plaintiff to control or supervise the activities of the guests at their party" (*id.* at 871).  In doing so, however, the Third Department acknowledged that circumstances such as those at issue in the instant case could give rise to such a duty; to wit, that Court wrote in relevant part that,

> "[here], there was no fight nor was there proof of any uncontrolled party guests that may have led to a dangerous situation.  In fact, there is no proof that a third person was involved in any way with plaintiff's fall from the balcony.  Furthermore, despite proof that plaintiff drank alcohol at the party, there is no proof in this record that her consumption was anything other than voluntary (*compare Oja v Grand Ch. of Theta Chi Fraternity*, 257 AD2d 924, 925) or that her actions needed to be controlled because she was stumbling, slurring her speech or unable to control her physical abilities (*see e.g. Dollar v O'Hearn*, 248 AD2d 886, 887)."

In this case, plaintiff, who had reached the age of majority, but who was still a minor in the eyes of the law for the purpose of purchasing alcohol (*see* Alcoholic Beverage Control Law § 65 [1]), exhibited telltale signs of intoxication at a large party to which he and others were permitted to bring their own alcohol, at which no effort was made to exclude underage drinkers, and during which the hosts exhibited neither care nor concern for any intoxicated partygoer.  Consequently, in my view, the resident defendants assumed a duty to supervise guests at the party, including plaintiff, through their control and possession of the house, as well as their presence at the house during at least part of that large, untamed affair.

IV

   Accordingly, for the foregoing reasons, I respectfully disagree
with the majority that the court erred in denying the motions and
cross motions of the resident defendants seeking summary judgment
dismissing the fourth cause of action, for negligent supervision,
against them.